EDWIN S. PICKETT, PROSECUTING ATTORNEY, *vs.*
ANTONIO MARCUCCI'S LIQUORS AND CONTAINERS.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 10th—decided October 3d, 1930.

*Louis Sperandeo,* for the appellant (defendant).

*Edwin S. Pickett,* Prosecuting Attorney, with whom. on the brief, was *Harry B. Bradbury,* for the appellee (plaintiff).

HAINES, J. The requested changes in the finding are not of a character to require action by this court. Even if some of the findings are in a sense irrelevant as claimed, they can do the respondent no harm upon this appeal.

Marcucci with his family occupied the first floor and basement of a dwelling-house in New Haven. The basement contained a kitchen, a large room with table and chairs, and a short passageway, at the end of which was a door which leads to a subcellar. At one end of the subcellar is a small room or closet partitioned off and closed by a door which can be locked. The basement has a front and a rear entrance. Two officers of the New Haven police department, Goldrick and Dunn, upon information received by them that Marcucci was selling liquor, watched the premises for some days and were convinced by what they saw and heard that the illegal sale of liquor was in fact going on there. In the evening of November 23d, 1929, they went to the premises again, and Goldrick knocked on the front door of

the basement which was opened by a daughter of Marcucci to whom Goldrick disclosed his identity as a police officer and showed his badge and was admitted, the daughter calling to her father that it was the police. Proceeding toward the large room, Goldrick was met by Marcucci who asked him what he wanted and whether he had a search warrant. Goldrick replied that he had none and was there only to look over Marcucci's visitors and find what they were doing there. Marcucci replied that they were all friends of his who were there for a social call. There were fourteen men in the room who were not members of Marcucci's family. In the meantime officer Dunn had gone to the front door on the upper floor and was admitted by another daughter of Marcucci's after making it known that he also was a police officer. He intercepted some of the fourteen men who had run up the stairs to the first floor, and Marcucci and all these men were put under arrest. Upon the table, when Goldrick entered, were two or three gallon jugs containing wine, several milk bottles containing wine or the dregs of wine, and some glasses with similar contents, and several of the men were more or less intoxicated. The officers had neither warrants for the arrest nor a search warrant. Observing that the door at the end of the passageway was open, they passed through it to the subcellar where they found twenty-five fifty-gallon barrels of wine, two or three of which had faucets in them and were partially full, while the others were full and tightly bunged. Also observing the locked door of the smaller room, they asked Marcucci for the key, and after protesting that he did not have it and had no control over that room, he produced a key and handed it to one of the officers, who unlocked the door and entered, finding eight more fifty-gallon barrels of wine, one of which had a faucet, the others being tightly bunged.

Calling another officer to remain in the premises, Goldrick and Dunn took all the men to the police office. Marcucci obtained bail and returned to the house sometime after midnight. The officers obtained a truck and proceeded to remove the barrels of wine. Marcucci, who was then present, protested that the wine had cost him "a great deal of money" and offered them $500 to leave the wine where it was, but it was taken away and put in storage where it still remains. The removal was completed about seven o'clock the following morning, which was Sunday, November 24th, 1929. In the late afternoon or early evening of that day, officer Goldrick telephoned to the City Attorney's office for a search warrant, saying that he had already seized the wine and giving particulars. The search warrant was issued the following morning, November 25th, but was dated November 23d, and upon this officer Goldrick made a return of his seizure. The search warrant was never served upon Marcucci, nor was he ever summoned to appear to show cause why the wine should not be adjudged a nuisance, nor was notice ever given to Marcucci or any other person that the warrant had been issued. The court correctly held that the search warrant was without validity and in so far as proceedings were begun thereunder they were of no effect. Marcucci was tried and convicted December 29th, 1929, in the City Court of New Haven, for unlawfully owning and keeping wine, and sentenced to pay a fine of $150. He appealed to the Court of Common Pleas, but the appeal was withdrawn and he paid the fine. Upon the withdrawal of the appeal, the Prosecuting Attorney of the Court of Common Pleas was notified that the wine had been seized and remained in the possession of the New Haven police department, and on January 21st, 1930, he brought the present action for an order for the disposition of

the wine and its containers. The court, after hearing, found the liquors and containers were kept with intent to violate the law, and ordered them destroyed, and the respondent appealed. The finding is that these were in fact a nuisance. General Statutes (Rev. 1918) § 2784.

One of the questions presented by the appeal is the legality of the seizure of the wine by the officers in the respondent's dwelling in the early morning of November 24th, 1929.

The provisions as to search and seizure and due process of law, contained in the Fourth and Fifth Amendments to the Constitution of the United States, as the respondent properly recognizes, have their operation only upon those powers which are delegated to the Federal Government and do not limit the powers of the several States. *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362, and cases cited; *Weeks* v. *United States,* 232 U. S. 383, 389, 34 Sup. Ct. 341; *State* v. *Magnano,* 97 Conn. 543, 546, 117 Atl. 550. However, the Constitution of Connecticut, Article First, § 8, provides in almost identical language for the security of its people "in their persons, houses, papers and possession from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Searches and seizures without warrant are not prohibited, but only *unreasonable* ones, and the reasonableness or unreasonableness of the search or seizure is a question for the court to be determined from a consideration of all the circumstances involved. This is true under both constitutional provisions. *Carroll* v. *United States,* 267 U. S. 132, 146, 45 Sup. Ct. 280; *United States* v. *Vatune* (Cal.) 292 Fed. 497; *Haile* v. *Gardner,* 82 Fla. 355, 91 So. 376. It is beyond question that the officers

had seen enough to convince them that liquor had been and was being sold by the respondent in this dwelling, and no fair question can be made of the propriety or legality of their entry under the circumstances. Their entrance was peaceable and unopposed and the doors were opened to them. The entry was not procured by stealth, subterfuge or any kind of deception. The respondent was himself present in the house, and these officers were there in the performance of their duty of enforcing the liquor laws of the State. After the entry it was doubly apparent to them that the law was then being violated in that house and further violations threatened, and it became their duty not only to arrest the participants in the offense but "to seize anything" which was "then being used to commit the offense and which might be made evidence of his guilt," and no warrant for arrest or search warrant was necessary. *State* v. *Magnano,* 97 Conn. 543, 545, 117 Atl. 550; *Smith* v. *Jerome,* 93 N. Y. Supp. 202, 203; *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634; 1 Bishop, New Criminal Procedure (2d Ed.) p. 153. It is clear that the jugs, bottles and glasses on the table were "implements" of the offense, and though the officers did not take them, they could legally have done so. The right to seize without a warrant the "implements" of the offense was co-extensive with the right to arrest the perpetrators of the illegal acts. *State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634. This right also extended to such other articles or things so used which could be there discovered by a search conducted in a reasonable and proper manner by the officer making the arrest, subject to the reasonable requirement of making effective a lawful arrest. *Carroll* v. *United States,* 267 U. S. 132, 158, 45 Sup. Ct. 280; *Haile* v. *Gardner,* 82 Fla. 355, 91 So. 376, 378; *Weeks* v. *United States,* 232 U. S. 383, 392, 34 Sup. Ct. 341; 1 Bishop,

New Criminal Procedure (2d Ed.) p. 153, § 211. Several of the men stated to the officers while they were in the room, that they had bought wine there from Marcucci; all the men were more or less intoxicated; the articles on the table were obviously then being used, and further, the officers had on the night before seen through the window, that Marcucci was pouring wine and receiving money therefor, and these and other circumstances which were known to the officers, were sufficient to make out a case under the law. Nevertheless, entering an open door into another room in company with Marcucci himself and finding other wine which they had had reason to believe was also being kept for illegal sale or exchange, is not such an extension of the right of search without a warrant, that it could fairly be held illegal or unreasonable. The keeping of intoxicating liquors with intent to sell them as a beverage, is illegal. These officers had sufficient reason for the belief that then and there Marcucci was keeping, for that unlawful purpose, other liquor than that in the jugs and bottles on the table. This furnished legal justification for his immediate arrest and for the seizure of such liquor as could be found by reasonable search of the dwelling wherein they lawfully then were, and no warrant for the search or arrest was necessary. We do not think the rights of the respondent were violated either in the entry or seizure. We hold their action to be reasonable search and seizure. *Ely* v. *Bugbee,* 90 Conn. 584, 589, 590, 98 Atl. 121; *State* v. *Magnano,* 97 Conn. 543, 545, 117 Atl. 550. But it is urged that this wine in the barrels was not in fact produced as evidence at the trial and that it was not necessary to make effective the arrest, because there was other wine which they could have seized. We cannot say from this record that the possession of this wine in barrels was not a fact before the trial court.

Indeed, it could hardly be doubted, because, though it does not appear that any liquors were actually put in evidence, yet the court found Marcucci guilty of keeping wine illegally. While none of the wine was actually produced in court, the possession of all of it was obviously a vital feature of the prosecution and served a necessary and definite purpose in the criminal proceeding strictly within the provisions of Chapter 211 of the Public Acts of 1929. After it was thus taken, the wine was properly *in custodia legis*. The respondent was thereafter tried and on December 9th, 1929, convicted of keeping wine with intent to sell it illegally. He filed an appeal on that day, but withdrew it December 24th, and the Prosecuting Attorney of the Court of Common Pleas was forthwith notified of the seizure of the wine and that it was then in the possession of the New Haven police department. On January 21st, 1930, he brought this action for an order for the disposal of the wine. One of the questions presented by the appeal at this point is whether the Court of Common Pleas acquired jurisdiction to entertain the proceeding and issue the order for the destruction of the wine. It is claimed by the respondent that Chapter 211 of the Public Acts of 1929, under which the proceeding was conducted, is unconstitutional, for one reason that it attempts to seize, condemn and confiscate property of the respondent without due process of law, in that there is no provision for seizure, or if lawfully seized, no provision for sequestration, condemnation and confiscation. We hold the seizure of the wine legal, and that it had been properly seized and sequestrated and put *in custodia legis*. It then became necessary to determine its status and disposal, and the Act of 1929 provides how this shall be done. The respondent seems to confuse this wine in the present circumstances, with liquors seized in an independent pro-

ceeding initiated by the issuance of a search warrant.
All of Chapter 144 of the General Statutes (Rev. 1918)
as amended, except § 2784, deals specifically with pro-
cedure under a search warrant. The wine in this case
was not taken under a search warrant and the pro-
cedure provided in Chapter 144 of the General Statutes
(Rev. 1918) has no application to the present situa-
tion. The distinction between liquors seized under a
search warrant and liquors seized in a criminal proceed-
ing without a search warrant, is illustrated in the pro-
hibition enforcement act of Montana which provides
specifically for two methods of procedure against
liquors illegally kept for sale. One applies to cases in
which the officer has probable cause for believing that
the law is being violated, though not in his presence,
and the other is applicable to cases in which the viola-
tion takes place in the presence of the officer. In the
first class, it is required that a search warrant shall
issue before search for the liquors is made and the pro-
cedure to be followed is prescribed. In cases of the
second class, the officer arrests the offender and seizes
the liquors without a search warrant, together with the
vessels, fixtures and appurtenances. *State ex rel. Ne-
ville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634. The first
section of Chapter 144 (Rev. 1918) viz: § 2784, is of
course general in character. It stamps all intoxicat-
ing liquors which are intended by the owner or keeper
thereof to be sold or exchanged unlawfully, as a nui-
sance. That applies to the wine in this case, if it was
so owned or kept, and the court has found it was.
Under these circumstances it is apparent that there is
no conflict between that Chapter and the Act of 1929
which we are considering. This Act relates only to
liquors which an officer has seized or taken into posses-
sion in a criminal proceeding. This of course means
lawfully seized or taken. The wine in question having

been so seized in a criminal proceeding, we have in the Act specific provisions for its disposal. Section 4 provides, *inter alia*, that where liquors and their containers "shall have been seized or taken possession of by any officer" in a criminal proceeding in a court other than the Superior Court or Court of Common Pleas, and a conviction has been had with no appeal taken, such court shall forthwith cause notice to be given to the Prosecuting Attorney of the Criminal Court of Common Pleas *which shall have jurisdiction,* if there be such court, otherwise to the State's Attorney of that county, and the notice shall include a description of such liquor and containers, and the Prosecuting Attorney "shall make application to such Court of Common Pleas . . . for an order for the disposition of such liquor, containers, implement, vehicle, article or property, upon which . . . such court shall proceed as hereinbefore provided." The provisions for the procedure are contained in § 1 of the Act, and it is directed that the court shall determine whether such liquor and containers have been "owned, kept, used, transported or sold, or shall have been intended to be used, transported or sold, in violation of any law," and "whether any of such liquor is fit for use for medicinal purposes and shall determine the time when and the manner in which, subject to the provisions of this Act," they shall be disposed of. Sections 2 and 3 further provide that if such liquor is found not to be fit for medicinal purposes, the court shall issue a warrant addressed to some proper officer, directing him to destroy the liquor and make his return upon such warrant. If it is fit for medicinal purposes, it may be sent to hospitals, and the court shall order the containers to be sold. Section 5 provides that any person claiming an interest in such property shall be given reasonable notice of the pendency of such application, and he may enter his

appearance and claim ownership, and shall be heard by the court upon such claim, and if the court finds the property belongs to such claimant and shall not have been sold, used, owned, transported or kept with intent to sell, use or transport in violation of any law, it shall order it returned to the owner. If the court shall find that it does not belong to him or has been illegally used as above, it shall order it disposed of as above provided. Public Acts of 1929, Chap. 211. The liquors being properly in custody, it is clearly within the power of the legislature to confer jurisdiction upon the Court of Common Pleas to hear and determine all questions of its ownership and status and direct its disposition. The detailed procedure above outlined furnishes ample protection to all parties in interest and deprives no one of his property without due process of law.

We do not overlook the claim of the respondent that while he was convicted December 9th, this proceeding was not brought until January 21st following, and therefore the right of condemnation was in effect waived and the possession by the police department after the conviction was that of bailee only. If the notice required by the Act of 1929 had not been given for that length of time, there might be some ground for the contention made, but, as appears by the record, notice to the proper official of the Court of Common Pleas was given "forthwith" upon the withdrawal of the respondent's appeal December 24th. This served to bring the matter within the jurisdiction of the Court of Common Pleas and to continue the liquors and containers *in custodia legis* subject to the jurisdiction and control of that court. Even if as appears, the succeeding application and order were not brought until January 21st, the objection of unreasonable delay would not lie under the circumstances. We do not

think the time was necessarily unreasonable, and in any event, the court finds specifically as a fact that under the circumstances these proceedings were taken within a reasonable time.

No further issues raised by the appeal require discussion save the final claim of the respondent that the Act of 1929 was not legally validated by the legislature at its special session. The grounds of this claim are that, in the form in which it was enacted, the Act was void and unconstitutional in its inception, and therefore could not be validated, and that this is a criminal statute and therefore comes within the inhibition against *ex post facto* laws. We have sufficiently dealt with the first claim and pointed out its invalidity, and no further discussion is required. As to the last claim, the sufficient answer is that this is not a criminal statute at all. While the seizure took place as part of a criminal proceeding, the subsequent action in the Court of Common Pleas is an action against the *res,* an action *in rem,* to which the claim of *ex post facto* does not apply. 12 Corpus Juris, p. 1099, § 805. This sufficiently covers all claims specifically raised by the appeal. However, in his brief the respondent does extend the discussion to the effect of the so-called validating acts passed by the General Assembly at its special session August 6th, 1929. We have indicated our view that the terms of this Act (Public Acts of 1929, Chap. 211) were not in violation of constitutional requirements. The brief of the respondent speaks of the constitutional defect in the passage of the Act, referring to the fact that it did not have executive approval within three days, Sundays excepted, after the adjournment of the legislature. The respondent correctly says that under the decision in the *McCook* case (109 Conn. 621, 147 Atl. 126) this fact rendered the Act unconstitutional and void and of no effect, but

an examination of the Acts passed at the special session shows that the legislature not only sought to validate the Acts in question, but in fact also re-enacted them. It provided that each of these Acts "is, in the order of priority of its signature or approval by the Governor, *enacted* and declared to have the force and effect to which it would be entitled by its terms and by the order of its priority, subject, however, to the effect of any judgment heretofore rendered holding any specific act invalid in whole or in part." Special Session, 1929, Chap. 1, § 1. From and after August 6th, 1929, Chapter 211 of the Public Acts of 1929 was valid and existing law of the State of Connecticut. *Preveslin* v. *Derby & Ansonia Developing Co., ante,* p. 129, 151 Atl. 518; *Siller* v. *Siller, ante,* p. 145, 151 Atl. 524. The present case which arose the following December, is governed by it. Other claims in this connection do not require consideration.

There is no error.

In this opinion the other judges concurred.