**UNITED STATES of America**

v.

**John MACRI.**

**Cr. No. 10074.**

United States District Court
D. Connecticut.

June 2, 1960.

Harry W. Hultgren, Jr., U. S. Atty., Hartford, Conn., Francis M. McDonald, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Joseph Adinolfi, Jr., of Schatz & Schatz, Hartford, Conn., for defendant.

**J. JOSEPH SMITH, Chief Judge.**

The accused, John Macri, is under arrest pursuant to an indictment found by a grand jury charging him with failure to purchase an Occupational Tax Stamp in violation of Sections 4411 and 7262 of Title 26 of the United States Code. Macri has made a motion in advance of trial, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C., for the return of certain property alleged to have been illegally seized and for the suppression of the use of said property as evidence in the criminal proceedings now pending against him. The indictment, filed on March 16, 1960, charges that the accused was engaged in the business of accepting and receiving wagers between September 1, 1959 and March 1, 1960 and that he failed to purchase the $50 Occupational Tax Stamp for the period ending June 30, 1960. A warrant for Macri's arrest was issued on or before March 18, 1960 and was received by Special Agent Pulcini of the Internal Revenue Service on March 18, 1960. After having received word that the arrest warrant had issued, Agent Pulcini along with Officer Dunbar, a Connecticut State Police Officer, proceeded to the home of the accused at 323 Hillcrest Terrace Extension, Meriden, Connecticut, to make the arrest. Agent Pulcini did not have the arrest warrant in his possession for the purposes of making the arrest, nor did he obtain a search warrant. The plans called for the arrest to be made at 3:00 p. m. in conjunction with simultaneous arrests of twenty-five other persons who had been indicted by the same grand jury for

violations of the tax laws on gambling activity. Officer Dunbar had previously taken part in a raid by the state authorities on Macri's home some six weeks prior to March 18. At that time, the state officers entered through the front door of the Macri residence and up the stairs to the living quarters on the second level. The officers noticed a toilet flushing and suspected that Macri was attempting to dispose of evidence although some evidence was obtained and Macri was arrested and pleaded guilty to pool selling in the Municipal Court. Because it was felt that Macri would again attempt to destroy any incriminating evidence in his possession, Agent Pulcini and Officer Dunbar decided to enter the home from the rear door so as to avoid being detected in advance by Macri who was thought to be in his bedroom overlooking the front of the house.

At approximately 3:00 p. m. on March 18, 1960, Pulcini and Dunbar, both dressed in plainclothes, proceeded to the rear of the Macri home to the rear entrance. Upon finding the outside door to be locked, they pried open the outer door with a pinch bar, kicked in the inner door which had been bolted with a chain lock, and entered into the kitchen of the home. The officers did not make known their authority or purpose or make a demand of entry prior to breaking into the home in the manner described. Immediately upon gaining entry into the kitchen, Agent Pulcini announced that he was a "federal agent" and that this was a "federal raid". The officers then proceeded down the hall to the front bedroom where Macri was observed in the bedroom crumpling up a copy of the "Armstrong Daily News" and coming towards them. Pulcini identified himself as a Treasury Agent, showed Macri his badge, and asked Macri to present his wagering stamp. Macri announced that he did not have a stamp and Pulcini announced that he was under arrest. Macri was then asked to strip to his underclothes and a search was made of his clothing and person by Dunbar. Both officers then searched the bedroom where Macri was found including a desk at which Macri was believed to have been seated just prior to being confronted by the officers. As a result of the search, the following items were confiscated: a telephone, a radio, a copy of the "Armstrong Daily News", six ball point pens, ten 3" x 5" blank pads and two bundles of currency in the aggregate sum of $5,645.

Macri contends that the search was illegal because made without a search warrant and that it was not a valid search incident to a lawful arrest because the arrest was not lawfully made.

 The Fourth Amendment to the Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The protection under this provision of the Constitution reaches all citizens, whether accused of crime or not and it is the duty of all those enforcing the federal laws to recognize this right of the citizen. If the rights of the citizen under this constitutional safeguard are violated through an unreasonable search and seizure, any evidence so obtained for use against the citizen in a criminal prosecution in a federal court may be suppressed. Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. A search may be valid even though made without a search warrant, if made of a place where a person is lawfully arrested so as to find and seize articles which are the fruits of the crime or the means by which a crime was committed. Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145. Where a lawful arrest is made at a person's dwelling, a lawful search may be made of the premises which are under the control of the arrested person and may even extend beyond the room where the person is

found. Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (search of four rooms for five hours, held valid). In the present case, the scope of the search was confined to the person of the accused and the room in which he was found to have been engaging in gambling activity. Such a search, considered apart from the question of whether the arrest on which it was based was lawful, cannot be deemed to have been violative of the constitutional guaranties under the Fourth Amendment. Our inquiry must then be directed to the lawfulness of the arrest on which the search is claimed to have been based.

An arrest made pursuant to an arrest warrant which has been issued at the time of the arrest, is a lawful arrest notwithstanding the fact that the arresting officer does not have the arrest warrant in his possession at the time of the arrest. Rule 4(c) (3), Federal Rules of Criminal Procedure; United States v. Petti, 2 Cir., 1948, 168 F.2d 221, 223. Rule 4 is silent on the question of whether a federal officer must make a demand for admission and state his authority and purpose before breaking into a person's home to make an arrest authorized by an arrest warrant.[1] In determining the legality of an arrest made by a federal officer without an arrest warrant, reference must be made to the local law of the state in which the arrest is made. United States v. Perez, 2 Cir., 1957, 242 F.2d 867, 869, certiorari denied 354 U.S. 941, 77 S.Ct. 1405, 1 L.Ed.2d 1539; United States v. Burgos, 2 Cir., 1959, 269 F.2d 763, 766; Seawell v. United States, 4 Cir., 1957, 243 F.2d 909, 912. In the case of an arrest by a federal officer under an arrest warrant issued by a federal judicial officer, the Supreme Court has indicated that state law should also control. In United States v. Di Re, 1948, 332 U.S. 581, at page 589, 68 S.Ct. 222, 92 L.Ed. 210, the Court pointed to the Act of September 24, 1789 (Ch. 20, Sec. 33, 1 Stat. 91) which provided in its original form that the arrest by judicial process for a federal offense must be "agreeably to the usual mode of process against offenders in such State". The Revisors to the United States Code saw fit to remove the quoted provision, presumably in the belief that the Federal Rules of Criminal Procedure had supplanted the statute. However, Rule 4 does not provide for the specific situation met in the case at bar. We feel, therefore, that we must go to the state law under the principle recognized by the Supreme Court in its view of the Act of September 24, 1789. The Court stated, 332 U.S. at page 590, 68 S.Ct. at page 226 of the Di Re case that the enactment of a federal rule in some specific cases seems to imply the absence of any general federal law of arrest.

It was established early in the Connecticut law, that an officer may break open the door for the purpose of making an arrest if he has been refused entry after having made known his business and made a demand for admittance. State v. Shaw, 1789, 1 Root, Conn., 134; Kelsy v. Wright, 1789, 1 Root, Conn., 83. It was later recognized that there are cases which would not be within the reason of the general rule and which would form a just and reasonable exception. In Read v. Case, 1822, 4 Conn. 166, a sheriff was directed under a mittimus obtained by Read's bail to arrest Read who had threatened to resist arrest

---

1. There is an express statutory provision under federal law in the case of a search warrant. 18 U.S.C. § 3109 provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant".

The statute, although limited in applicability to the execution of a search warrant, reflects the rule pertaining to arrest as enunciated in Semaynes Case, 5 Co.Rep. 91a, 11 E.R.C. 629, 77 Eng. Repr. 194, 195 wherein the requirement of demand for admission and statement of cause was established as a prerequisite before breaking into a person's home to make an arrest under execution of the King's process.

through violence. The defendant Case, the assistant to the bail, was allowed by Read to enter the latter's home, there being no indication that there was a plan to arrest him. While Case was in the home with Read, the sheriff knocked on the door whereupon Case grabbed Read's gun, then unbolted the door so as to permit the sheriff to enter and arrest Read. Read brought an action of trespass against Case and the court held that the arrest was lawful as being an exception to the general rule requiring announcement of purpose and demand of entry prior to breaking in to make an arrest.[2] In the instant case, the arresting officers broke into Macri's home forcibly, without a prior announcement of purpose or demand for entry so as to seize incriminating evidence which they had reason to believe would have been destroyed if notice were given. There is no direct Connecticut authority recognizing an exception to cover this particular type of situation.[3] In California, where illegally seized evidence is not admissible in the state courts, it has been held that demand and explanation of purpose are not required prior to breaking in with force where there is a justifiable belief on the part of the officer that notice of his coming may result in the destruction of incriminating evidence by the accused. People v. Maddox, 46 Cal.2d 301, 294 P.2d 6; People v. Shelton, 151 Cal.App.2d 587, 311 P.2d 859. The Read and Maddox cases, supra, were both cited without approval or disapproval in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, where the Supreme Court considered the legality of a seizure in a home by officers in the District of Columbia. The officers, having neither an arrest warrant nor search warrant, knocked on the door of a suspected narcotic peddler's apartment and announced themselves as "police" when asked from within who was there. The occupant, Miller, opened the door on an attached chain and attempted to close the door. The officers ripped the chain off, entered the apartment, made the arrest of Miller and searched the premises. The court applied the District of Columbia law requiring demand for entry and announcement of purpose before breaking in and held that the arrest was unlawful thereby rendering the ensuing search illegal.[4] It was said that the rule requiring demand for entry and announcement of purpose applies whether the arrest is made by warrant or for a felony without a warrant. The question of whether the unqualified requirements of the rule were open to exception justifying noncompliance in exigent circumstances was not raised in the case and the court made no decision on this point. Cf. dissenting opinion by Clark, J., 357 U.S. at page 318, 78 S.Ct. at page 1200. The majority stated, however, 357 U.S. at page 313, 78 S.Ct. at page 1197:

> "We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality

**2.** A similar provision is made in 18 U.S.C. § 3109 where it is provided that an officer executing a search warrant may break (in) "when necessary to liberate himself or a person aiding him in the execution of the warrant". It would appear that the statute purports to codify the principles expressed in these early Connecticut cases on arrest.

**3.** The lack of authority on this point in Connecticut can probably be explained because of the rule of evidence in Connecticut which allows illegally seized evidence to be admitted in a criminal proceeding. See e. g. State v. Carol, 1935, 120 Conn. 573, 181 A. 714.

**4.** The court noted that the requirement of demand for entry and announcement of purpose has been widely adopted in numerous jurisdictions throughout the United States and also in the Code of Criminal Procedure of the American Law Institute. See also the discussion of the history of the rule in Accarino v. United States, 1949, 85 U.S.App.D.C. 394, 179 F.2d 456.

that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house. Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house."

The courts have drawn a distinction between entry by force and a peaceful entry through deception or fraud. An entry effected by peaceful means through fraud or deception will not invalidate an arrest where there is no prior demand or announcement of purpose although a forcible breaking may be unlawful in such a case. Leahy v. United States, 9 Cir., 1959, 272 F.2d 487 (appeal pending); Hopper v. United States, 9 Cir., 1959, 267 F.2d 904. In Hitchcock v. Holmes, 43 Conn. 528, a peaceful entry made by an officer for the purpose of attaching property was held lawful although there was no prior announcement of purpose.[5] It is significant to note that in Read v. Case, supra, where the grounds for the exception to the general rule were established, there was an entry effected primarily through deception rather than forcible breaking into the house.[6] In Leahy v. United States, supra, Judge Pope, in a concurring opinion at page 491 of 272 F.2d, acknowledged the distinguishing feature of the case from Miller because of the absence of force in the Leahy case. He then stated as another reason for allowing the admission of the evidence seized, the fact that the officers entered by fraudulent means in order to obtain incriminating evidence which the officers believed might have been destroyed if notice were given. Judge Pope spoke of this as being the exceptional case referred to in Miller justifying noncompliance with the requirement of notice. Whether or not he would have approved of such an exception in the case of a forcible entry is not indicated. We do think that the use of force was a significant factor in the Miller case and in light of Justice Brennan's warning not to give the doctrine of demand and announcement of purpose "grudging application", we feel that the present case is squarely within the condemnation expressed there. We have before us a sudden breaking of the house with absolutely no warning or notice, to serve a warrant for arrest for a misdemeanor. In view of the development of the law on this subject it is indeed unlikely that the Connecticut courts would carve out an exception to cover this situation.

The government strenuously argues that there is an exigency here because of the danger that evidence may be destroyed. There is no contention that the breaking was necessary in order to execute the arrest warrant. See McKnight v. United States, 1950, 87 U.S. App.D.C. 151, 183 F.2d 977, 978. The

---

5. Language in some Connecticut cases makes it appear that the Connecticut courts might look with disfavor on entries obtained through stealth or deception. See State v. Magnano, 1922, 97 Conn. 543, 545, 117 A. 550; Pickett v. Marucci's Liquors, 1930, 112 Conn. 169, 174, 151 A. 526.

6. Our Court of Appeals has indicated that an entry made peacefully and even through fraud or deception will not invalidate an arrest where there has been no prior demand or announcement of purpose. United States v. Burgos, 2 Cir., 1959, 269 F.2d 763; United States v. Volkell, 2 Cir., 1958, 251 F.2d 233 (entry through open window), certiorari denied 356 U.S. 962, 78 S.Ct. 1000, 2 L. Ed.2d 1068; United States v. Abel, 2 Cir., 1958, 258 F.2d 485, affirmed 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; United States v. Garnes, 2 Cir., 1958, 258 F.2d 530, 533, certiorari denied 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637.

real purpose of the breaking was the search. If the government agent had obtained a search warrant, he would have been bound by the requirements of 18 U.S.C. § 3109 and thus a breaking in without notice would not have been allowed merely for the purpose of seizing evidence. To permit the government to dispense with a search warrant and to proceed under an arrest warrant so as to do that which would otherwise be unlawful, would be to allow it to circumvent a statutory requirement based on principles with roots deep in the common law. An arrest warrant should not confer greater authority to search on an officer than he would have under a search warrant. See United States v. Lefkowitz, 1932, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877.

There is also a question here as to just how necessary this evidence may be as bearing on the crime with which Macri is charged and for which he was arrested. The indictment charges him with engaging in gambling activity without a tax stamp during the period from September 1, 1959 to March 1, 1960. The arrest and seizure occurred on March 18, 1960. Although we will not attempt to make any rulings here on the admissibility or quantum of evidence required for conviction, it does appear that the evidence seized is not the exclusive means on which the government must rely in order to obtain a conviction.

■ The arrest here is held to be illegal for failure to comply with the requirements of demand and announcement of authority and purpose. The search, therefore, is not one incident to a lawful arrest and the items so seized should be suppressed. There is no precedent in the Connecticut law for noncompliance with the requirements of demand and announcement of authority and purpose in order to obtain incriminating evidence when making an arrest. In looking to the development of the law in other jurisdictions, we do not feel that an exception can be carved out of the general rule where, as here, the breaking is accomplished forcibly and where it has not been shown that there were exigent circumstances of such a compelling nature as to warrant noncompliance.

■ Macri has requested, both, that the property be suppressed as evidence in the criminal proceedings and that it be returned to him. The portion of the motion requesting a return of the property seized must be denied. Rule 41(e) of the Federal Rules of Criminal Procedure provides: "If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial." Title 26 U.S.C. § 7302 provides for the forfeiture of property used in violation of the internal revenue laws. It is provided that: "it shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used and no property rights shall exist in any such property". Section 7302 applies to property used in violating the federal wagering tax laws. United States v. General Motors Acceptance Corp., 5 Cir., 1956, 239 F.2d 102. The government has alleged that the property seized was being used by Macri in gambling activity in violation of the federal wagering tax law. Since this property is subject to forfeiture, it cannot be returned pending the outcome of any libel by the government to enforce the forfeiture. This applies to the currency as well as the other items. Money which is being used in gambling activity in violation of the internal revenue laws is subject to forfeiture under 26 U.S.C. § 7302. United States v. Leveson, 5 Cir., 1959, 262 F.2d 659; United States v. Currency in the Total Amount of $2,-223.40, D.C.N.D.N.Y.1957, 157 F.Supp. 300. Property seized through an illegal search and seizure is subject to forfeiture. United States v. Eight Boxes, 2 Cir., 1939, 105 F.2d 896; United States v. Pacific Finance Corp., 2 Cir., 1940, 110 F.2d 732; United States v. Carey, 5 Cir., 1959, 272 F.2d 492.

The motion to suppress is granted and the motion for return of the property is denied without prejudice to any defenses which Macri may assert in any libel proceedings.