The defendant was charged in two counts with (1) selling liquor without a permit in violation of § 30-77 of the General Statutes and (2) violation of the state policy law, § 53-298, as amended by Public Acts 1961, No. 528, § 2. Upon a trial to the jury, she was found guilty on both counts. In her appeal to this court, she has assigned error in the refusal of the court to grant her motion to suppress the evidence obtained by the police after a search of her home without a search warrant; in allowing that evidence and police testimony of what was found to be introduced by the state in violation of the state and federal constitutional provisions prohibiting illegal search and seizure; in the use of the evidence and information so obtained in the prosecution of the defendant for the crimes charged; and in denying her motion for a directed verdict as to both counts.
 I
We address ourselves first to the assignment of error last stated. "A ruling denying a motion to direct a verdict was formerly not an assignable error even on an appeal from the judgment in the case." Maltbie, Conn. App. Proc. § 204; State v.Murphy, 124 Conn. 554, 567; State v. Fasano,119 Conn. 455, 459; State v. Boucher, 119 Conn. 436, 437. Under present procedure, a denial of a motion for a directed verdict may be assigned as error on an appeal from a judgment later entered. *Page 24 
Practice Book § 377; Maltbie, loc. cit. In the circumstances of this case, it was unnecessary to appeal both from a denial of the motion and from the judgment, as an appeal from the latter includes any error in the court's action on the motion. Rickey v. E. H. JacobsMfg. Co., 142 Conn. 495, 496. The ruling of the court must be tested by the evidence. For the appellant to prevail, it must appear that there was no issue of fact for the court to submit to the jury, that the facts were undisputed, and that the question presented was only one of law. H. Wales Lines Co.
v. Hartford City Gas Light Co., 89 Conn. 117, 125;Senderoff v. Housatonic Public Service Co.,147 Conn. 18, 21. Our examination of the evidence shows that the situation was not such that the motion could have been entertained properly, and the ruling of the court was correct.
 II
The defendant at the outset of the case filed a motion to suppress evidence allegedly obtained as a result of an illegal search and seizure. She assigns error in the denial of this motion by the court. The motion was filed on the analogy to a motion of the same name provided for under the federal rules of practice. Fed.R.Crim.P. 41(e). No such motion is cognizable under our common law or by statute or under the rules of court. See State v. Carol,120 Conn. 573, 576; State v. Magnano, 97 Conn. 543,547. It is foreign to our procedure and is not assimilable to any motion, written or oral, permitted under Connecticut law in a criminal case. The purpose of the proffered motion was to test the admissibility of certain evidence in advance of trial. This is not in accord with our procedure, which prescribes that no ruling on evidence pertaining to the general issue can be made by the court until after the evidence has first been offered in the course of a trial on the merits of the case, at which time an objection *Page 25 
made and reasons given would compel the offeror to state valid reasons in support of the offer; and a ruling admitting or excluding the evidence would then be assignable as error on appeal if an exception to the ruling had been duly taken. Practice Book §§ 155, 405; Cir. Ct. Rule 7.29.1(4).
Giving effect to what appears on its face to be an improper motion, pleading, or plea is permissible where a substantial similarity to a permissible one exists so that, but for the erroneous designation or formal incorrectness, the substance makes consideration allowable as being in consonance with our practice. In this case, neither expressly nor by implication can the motion to suppress evidence be regarded as in accord with our established procedure.
Our courts do not have the power to make rules coram judice, notwithstanding the apparent merit, convenience, or asserted advantage of the particular procedural innovation that might be urged. The rule-making power ultimately reposes in the justices of the Supreme Court of Errors and the judges of the Superior Court and fundamentally is derived from the implied powers at common law of the judges of the Superior Court to implement the machinery of justice. No single judge has the authority to make a rule or change one; and the exercise of this power requires not only the necessary consultation and consent of the judges but, in the case of the Circuit Court rules, notice, public hearing, and publication as well. General Statutes §§ 51-14, 51-260, 51-265, 51-267, 51-269, 51-22; Public Acts 1959, No. 28, § 5; Maltbie, "The Rule-Making Powers of the Judges," Practice Book, pp. XI-XVII.
It has often been suggested, as a sound reason for testing before trial the admissibility of evidence allegedly seized in disregard of the constitutional *Page 26 
rights of the accused, that the court should not interrupt a trial to determine the collateral issue of illegal procurement of otherwise competent evidence. This may be a sound rationalization which courts may adopt either to support a legislative change in a rule of evidence or to explain a rule of practice derived from authoritative decision and expressive of judicial policy. Such inquiry, however, into the illegal source of evidence cannot be called collateral, any more than the determination of the voluntariness of a confession offered in evidence against an accused can be called collateral; and undeniably such latter offer cannot be anticipated by a test of a confession dehors the trial on the issue of guilt or innocence. The reason stated above for the rule concerning suppression of evidence, as it obtains in the federal and in many state jurisdictions, should not be mistaken for the common law rule barring inquiry into the source of evidence otherwise competent and admissible. "The underlying principle [of the common-law rule] obviously is that the court, when engaged in trying a criminal cause, will not take notice of the manner in which the witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence." People v.Adams, 176 N.Y. 351, 358; Weeks v. United States,232 U.S. 383, 395.
The action of the trial court in overruling the motion to suppress the evidence was correct.
 III
The remaining two assignments of error relate to the claimed erroneous admission of evidence in proof of each count of the information. The defendant filed no request to charge and has taken no exception to the court's instructions to the jury. We must assume, therefore, that the charge to the jury *Page 27 
was correct. These claims of error must be considered as being directed solely to the rulings on evidence. In regard to the conviction on each of the two counts, the defendant maintains that the same prejudicial error had been made in admitting evidence obtained in consequence of a search and seizure violative of her constitutional rights under the fourth and fourteenth amendments to the constitution of the United States and article first, § 8, of the constitution of Connecticut.
No finding of facts was requested or made. Such facts as the court was entitled to find proved, in their relation to the claimed errors in the rulings on evidence, may be summarized as follows: At about 10:15 o'clock on the night of October 6, 1961, Officer Clarke, upon orders of the police department, purchased of the defendant a half-pint of whiskey labeled with a brand name and sealed with a government internal revenue stamp. He paid the defendant with two $1 bills and a quarter in coin, having first made a record of the serial numbers on the bills. The sale was made at the second-floor apartment where the defendant lived. The defendant had no permit for the sale of alcoholic liquor, and no such permit had been issued for the apartment. After the purchase, Officer Clarke rejoined Detectives Corbett and Dec, who were in a car in the vicinity of the premises and who had the place under surveillance before, during, and after the sale. Within fifteen minutes thereafter, all three returned to the apartment and knocked on the door, and the accused opened it. She was informed that they were members of the Hartford police department, was shown their badges, and was then placed under arrest. She was told that she was being arrested for selling liquor without a permit and keeping liquor with intent to sell and was asked her consent to search the premises. The defendant admitted them and told *Page 28 
them to go ahead and look around for the $2, to try to find the money, and that they would not find it. She denied having seen Officer Clarke before. The apartment consisted of a living room, two bedrooms and a kitchen. At no time did the police officers observe any occupant other than the accused. They did not ransack the apartment or extend their search for things other than the bills in question and other liquor. The accused did not ask them to leave. They found a half-pint of whiskey, of the same brand as the bottle purchased, under a pillow on a settee in the living room. The serial number on the bottle was 25424502. The serial number on the bottle sold to Officer Clarke was 25424508. No money was found. During the search for the money, the officers found two torn policy slips in a paper bag within a metal wastebasket beside the head of the bed in the bedroom of the accused. The defendant told the officers they were "numbers" slips but were "old stuff." She denied knowledge or ownership of the policy slips. She testified in her own behalf. She did not deny the sale. She admitted that the writing on the slips looked like hers.
Until the decision in Mapp v. Ohio, 367 U.S. 643, the prevailing rule in this state had been that, in a criminal case, articles offered in evidence which were relevant to the guilt or innocence of an accused person, and were not otherwise incompetent, would not be excluded because they had been seized in violation of the provisions of our constitution forbidding unreasonable searches and seizures; and that the provisions of the first ten amendments to the constitution of the United States, constituting the Bill of Rights, operated as a limitation upon the powers delegated to the federal government and were ineffective as regards the powers of the individual states. Wolf v. Colorado, 338 U.S. 25, 28,29, 39, 40; Weeks v. United States, 232 U.S. 383, *Page 29 
395; State v. Carol, 120 Conn. 573, 575; Pickett v.Marcucci's Liquors, 112 Conn. 169, 173; State v.Reynolds, 101 Conn. 224, 235, 236; State v. Magnano,97 Conn. 543, 546; State v. Griswold, 67 Conn. 290,305. Connecticut had never adopted the federal exclusionary rule of evidence — first enunciated as obiter in Boyd v. United States, 116 U.S. 616, and later, in the Weeks case, supra, unequivocally established as law — that evidence illegally obtained by federal officers would be inadmissible in prosecutions before federal courts. For reasons of public policy, cogently stated and amply verified by the steadily mounting assaults of unruly predators on the permeable shelter erected by society for its peaceable and orderly existence, the courts of this state had consistently adhered to the common-law rule that "[w]hen evidence tending to prove guilt is before a court the public interest requires that it be admitted. It ought not to be excluded upon the theory that individual rights under these constitutional guaranties are above the right of the community to protection from crime." State v. Reynolds,
supra, 235; State v. Zukauskas, 132 Conn. 450,458, 460.
The holding in the Mapp case, supra, decisively and unambiguously sets at rest the common-law rule hitherto in effect and renders inadmissible in prosecutions in state courts evidence obtained by searches and seizures in violation of the federal constitution. "The Mapp decision is binding on our courts." State v. DelVecchio, 149 Conn. 567, 573. Correlatively, the same rule is applicable to unreasonable searches and seizures (and arrests) under the constitution of Connecticut. The Mapp
case does not decide what searches or seizures are unreasonable, except as related to the facts and circumstances of that case. The emphatic import of that decision is to make inadmissible in a criminal *Page 30 
case in a state court evidence otherwise admissible, because it had been obtained by means violative of constitutional guarantees under the fourth amendment. A rule of law has no reason for existence in vacuo, and every decision must be read contextually with the facts on which it rests. What is "unreasonable" in a given case is a question of fact to be determined in the first instance by the trial court, as in the case of any other issue of fact; and it becomes a question of law only when it appears that the court had misunderstood or misapplied the law or had reached a conclusion contrary to one with which men exercising sound judgment could not reasonably disagree. No rule of thumb or inflexible standard can be arbitrarily imposed on the judicial determination of the fact of "unreasonableness"; and the ruling of the court, unless plainly in contravention of acknowledged principles of testing an issue of fact, should not be lightly disturbed. See such cases as United States v. Rabinowitz, 339 U.S. 56, 63;Mapp v. Ohio, supra; Abel v. United States,362 U.S. 217, 228; Harris v. United States, 331 U.S. 145,150; Go-Bart Importing Co. v. United States,282 U.S. 344, 357; Pickett v. Marcucci's Liquors,112 Conn. 169, 173; State v. Griswold, 67 Conn. 290, 304,305.
The main contention of the defendant is that as to each count the court, over her objection, admitted vital evidence which had been obtained as the result of a warrantless search and seizure. Absence of a warrant does not in itself make illegal a search and seizure otherwise unassailable. Neither the federal nor the state constitution forbids searches or seizures which were not made under the aegis of a warrant. It is only unreasonable ones that are prohibited; and the reasonableness or unreasonableness of the search or seizure is a question for the trial court to determine from a consideration of *Page 31 
all the circumstances involved. Harris v. UnitedStates, supra; Carroll v. United States, 267 U.S. 132,146; Pickett v. Marcucci's Liquors, supra;State v. Magnano, 97 Conn. 543, 545.
It has been the law from times antedating both the federal and state constitutions that a reasonable search and seizure may be conducted with the consent of the accused or may properly be made as an incident to a lawful arrest of the accused. The state makes no claim that the search of the defendant's premises and the seizure of the half-pint of whiskey and the policy slips were with consent of the accused, although the facts indicate that the entry by the police on premises of the accused was at her express invitation, offered not in deference to a pretension of authority but as a confident challenge that the identifiable money, which the defendant perhaps mistakenly believed indispensable to proof of an illicit sale, would not be found. The trial court evidently based its rulings mainly on the fact of consent. It is unnecessary to pass on the correctness of this reason or the ground on which the evidence was admitted, for if the ruling was correct it cannot be held to be erroneous because it was based on a wrong or inaccurate reason. Saporiti v.Austin A. Chambers Co., 134 Conn. 476, 478; Witek
v. Southbury, 132 Conn. 104, 110; Maltbie, Conn. App. Proc. § 36. The state offered in evidence the half-pint of whiskey and the two torn policy slips on the ground that they were taken after a search conducted as an incident to the arrest of the accused and that no warrant either for the arrest or the search and seizure was necessary.
"The Fourth Amendment has never been held to require that every valid search and seizure be effected under the authority of a search warrant. Search and seizure incident to lawful arrest is a practice of ancient origin and has long been an integral *Page 32 
part of law-enforcement procedures of the United States and of the individual states. The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control." Harris v. United States, supra.
The usual rule, derived from common law, is that a police officer may arrest without a warrant one believed by the police officer, upon reasonable cause, to have been guilty of a felony; and that he may arrest one guilty of a misdemeanor if it is committed in his presence. Carroll v. United States,
supra, 156; Price v. Tehan, 84 Conn. 164, 168. Under our statute, no distinction is made between felonies and misdemeanors; the statute requires an arrest warrant in all cases except when the offender is apprehended in the act or upon speedy information. General Statutes § 6-49; State v. Carroll, 131 Conn. 224,228, 231; Price v. Tehan, supra. The arrest in the present case was an "on-sight" arrest for an offense committed in the presence of the arresting officer. The short lapse of time between the commission of the crime and the arrest, under the circumstances of this case, is of no appreciable significance.
Section 30-77 of the General Statutes, for the violation of which the defendant was convicted under the first count, provides, inter alia, that "[a]ny person who, without a permit therefor, . . . sells or delivers . . . or owns or keeps with intent to sell or deliver, . . . any alcoholic liquor, shall be subject to the penalties prescribed." Section 30-107
authorizes any "police officer . . . acting within his . . . city . . . without a warrant, [to] arrest any person whom he finds in the act of illegally . . . selling alcoholic liquor, and seize the liquor." To the extent quoted, this section is declaratory of the *Page 33 
common law. Upon the question of keeping liquor with intent to sell contrary to law, evidence of sales made before and after the seizure is admissible.State v. Mead's Liquors, 46 Conn. 22. The police officers did not act illegally in their search for the money which constituted the fruits of the crime already committed and in taking into their possession anything which was being used to commit the offense and which might be made evidence of guilt. The seizure of the half-pint of liquor was warranted for its confirmatory use as evidence of sale and independently, as well, as evidence that such liquor was illegally being kept for sale in violation of the statute. See Pickett v. Marcucci's Liquors,112 Conn. 169, 174, 175. The record shows that a count charging the accused with keeping liquor with intent to sell unlawfully was abandoned before trial. That was a decision resting in the prosecutor's discretion; the seizure of liquor complained of was within the authority of the police officers to make, either as strong corroborative evidence of the illicit sale or as evidence of the separate crime of keeping with intent to sell; and it was not such an extension of the right of search and seizure without a warrant as to be held illegal or unreasonable. Pickett
v. Marcucci's Liquors, supra.
It is well settled that a search and seizure may lawfully be made without a warrant when it is incident to a legal arrest; that such arrest is accompanied by the right to search the person of the one arrested and the things and premises within his immediate control; that the house of one arrested may be searched as an incident to a lawful arrest therein; that whatever is found in consequence of such search may be lawfully seized if it is connected with the crime for which the arrest was made, including the fruits of the crime, the means instrumental or susceptible to its commission, *Page 34 
weapons by which the person arrested might effect his escape, and also property which is unlawfully in the possession of the accused. A general or exploratory search, whether with or without warrant, for the purpose of establishing that a crime is being or has been committed is constitutionally condemned. See Harris v. United States, 331 U.S. 145,153; United States v. Rabinowitz, 339 U.S. 56, 63;Abel v. United States, 362 U.S. 217, 225, 234, 238-41;Marron v. United States, 275 U.S. 192, 198 note,72 L.Ed. 231, 238; State v. DelVecchio, 149 Conn. 567; notes, 94 L.Ed. 671, 4 L.Ed.2d 1982, 51 A.L.R. 424, 436, 74 A.L.R. 1387, 82 A.L.R. 782; 47 Am.Jur. 515, § 19 Ann. Cum. Sup.
The accused was arrested in her home after having committed in the presence of the arresting officer the crime charged in the first count. With understandable and proper restraint, no attempt was made to search her person or clothing. The search of the premises was not unreasonable. The liquor found and seized was reasonably connected with the crime committed in the presence of one of the officers. The ruling of the court in admitting as an exhibit the liquor seized was correct.
There is nothing in the evidence to show that the finding of the two torn policy slips was the result of an exploratory search for the purpose of finding evidence of some crime unrelated to the crime committed. The policy slips were discovered coincidentally with the search for the money involved in the illegal sale of liquor. The question presented is whether the use of such evidence against the defendant is violative of her constitutional rights against unreasonable searches and seizures. No claim is asserted that her constitutional right against self-crimination had been invaded. The suggestion made in argument that upon finding this incriminating evidence a search warrant should *Page 35 
have been obtained grossly ignores the realities of assembling the informing officer, a prosecutor and a Circuit Court judge at one place at an unseasonable hour of the night for the vain purpose of authorizing a search and seizure already accomplished, and amounts to no more than a temporizing with the notion that the search was general and exploratory and, if so, beyond the redeeming virtue of a warrant. A legal search made as an incident to a valid arrest may not be struck down as violative of the fourth amendment merely because the officers who conducted the search had time to, but did not, obtain a search warrant. United States v. Rabinowitz,
supra, 65. It may be noted that the defendant disclaimed ownership, possession, or knowledge of the slips at the time of their discovery and seizure. See, for example, Abel v. United States, supra, 241. It is not disputed by the defense that the slips found were in fact policy slips, and the sole claim of error is that they were improperly admitted in evidence against the defendant and that without them the judgment on the second count cannot stand. She was convicted of keeping or having custody of a policy slip in violation of the statute. There was evidence on which the jury could reasonably find such keeping or custody. It follows that a legally proscribed article was in the possession of the accused and as such was subject to seizure by the police in the course of a proper search. The explanation of the defendant that the slips represented "old stuff," meaning thereby, no doubt, that they were evidence of a past transaction and were presently ineffective to accomplish the intended result, does not remove them from the prohibition of the statute. In any event, this point was not pursued in either brief or argument and must be considered as abandoned. The seizure of the slips by the police officers was not illegal and did not violate the claimed constitutional rights of the accused. The *Page 36 
ruling of the court in admitting the policy slips in evidence was correct.
In her brief and argument, the defendant for the first time raises the issue of entrapment. That issue was not presented in the trial court, and therefore we do not consider it. Taylor v. Hamden HallSchool, Inc., 149 Conn. 545, 555. Even if the claim were properly before us, the facts would clearly not sustain it. See State v. Marquardt, 139 Conn. 1.
 There is no error.
In this opinion DEARINGTON and KINMONTH, JS., concurred.