STATE OF CONNECTICUT *v.* ALBERT NEWSON ET AL.

SUPERIOR COURT
FAIRFIELD COUNTY AT BRIDGEPORT
FILE NOS. 16201, 16202, 16203

Memorandum filed June 7, 1966

*Donald A. Browne,* assistant state's attorney, for the state.

*Salvatore C. DePiano,* of Bridgeport, for defendants Albert Newson and Robert Hill.

*Herbert J. Bundock,* public defender, of Bridgeport, for defendant John Lamb.

WRIGHT, J. At a hearing before trial, testimony of several police officers was received, to the following effect:

At approximately 2 a.m. on May 14, 1965, one Jefferson ran into the police station to report that he had seen four colored men entering the United Beauty Supply Company warehouse on Fairfield Avenue, in Bridgeport, through the rear door. Jefferson, who lives next door to the warehouse, saw these men driving off in a truck, which he described as having a red cab, a blue body, and white lettering indicating that the truck belonged to a meat packing company. Jefferson also reported that one of the four colored men was Albert Newson, who was known to him, and another of the four men was "John Henry." When the police arrived at the scene shortly after receiving this report, they found that the rear door of the warehouse was open and a window had been smashed. The police put out a call to look for a truck with the foregoing description. At 5 a.m., Officer Flanagan came across such a truck, matching the description, with the name "Rall Packing Company" on the side. Officer Flanagan opened the rear door of the truck and found several packages of equipment of the type to be found in a beauty salon. The officer did not touch the equipment but immediately contacted police headquarters, and shortly thereafter two detectives arrived. The detectives kept the truck under surveillance until approximately 7 a.m., when the three defendants, Newson, Hill and Lamb, Negroes, approached the truck. The detectives saw the three defendants remove the contra-

band goods from the truck, which goods they placed at the side of a gasoline station nearby. The defendant Lamb drove off in the truck and was pursued by the two detectives, who arrested him at the Rall Packing house at approximately 7:15 a.m.

The defendants Hill and Newson were arrested at the scene by uniformed officers, who thereupon took Lamb and Hill to the police station. During the course of interrogation of Hill, at approximately 8:30 a.m., he was asked to place his belongings on a table, and certain matches, band-aids and keys, a wallet, a handkerchief, and other personal articles were revealed. He was then told that he could place his personal effects back in his pockets, but the matches and band-aids remained at the police station. Soon thereafter it was discovered by two other investigating officers that the premises of Mrs. Helen Taschijian, next door to the United Beauty Supply Company, had also been entered during the early morning hours, and Mrs. Taschijian had reported to the police that the only items missing were some band-aids and some matches.

### A. WERE THE ARRESTS OF THE THREE DEFENDANTS LAWFUL?

Our statute on arrest without warrant, § 6-49, provides that police officers may arrest "without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, and members of the state police department or of an organized local police department or county detectives shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony."

Certainly the facts which have been revealed in this case, involving speedy information from

Jefferson, involving immediate investigation by the police and the finding at the warehouse of an open rear door and broken glass, involving information about a truck with an individual description, involving an immediate city-wide search for the truck, involving a stakeout and the apprehension of the three defendants immediately after they had removed the contraband articles, would seem clearly to satisfy one or more of the three requirements of the statute, namely, speedy information, reasonable grounds for believing that a felony had been committed, or apprehension in the act.

B. WAS THE SEIZURE OF THE BEAUTY ARTICLES, WITHOUT A WARRANT, LAWFULLY EFFECTED?

It is conceded that no warrant was issued in this case. Whether or not it was feasible to obtain such a warrant in the early morning hours of May 14, 1965 (see *State* v. *Davis,* 24 Conn. Sup. 22, 34, 1 Conn. Cir. Ct. 361, 374 [1962]), there would be no need for the issuance of such a warrant in the event that the articles were seized as incidental to a lawful arrest. *State* v. *DelVecchio,* 149 Conn. 567 (1962); *Draper* v. *United States,* 358 U.S. 307, 314 (1959); *United States* v. *Rabinowitz,* 339 U.S. 56, 60 (1950); *State* v. *Reynolds,* 101 Conn. 224 (1924); *State* v. *Magnano,* 97 Conn. 543, 545 (1922).

The court finds that the contraband articles were seized within moments after the apprehension and arrest of the three defendants. Before that time, the articles in the back of the truck had not been touched by the police. The defendants claim that the opening of the rear door of the truck and the looking inside constituted a "search." In response to this contention, the state relies upon various decisions of the United States Supreme Court to the effect that latitude must be allowed in the search of a motor vehicle as such a vehicle can be

speedily moved out of the locality. See *Carroll* v. *United States,* 267 U.S. 132, 156 (1925); *United States* v. *Ventresca,* 380 U.S. 102, 107 n.2 (1965); also see comment in *Preston* v. *United States,* 376 U.S. 364, 366 (1964). In any event, whether or not such an act on the part of the police constituted a "search" is of relative unimportance in this case as the truck belonged to the Rall Packing Company and not to the defendants. It has been generally held that one moving to suppress evidence has the right to complain in a court of law only if such illegal search violates his own constitutional rights. Thus, many cases have held that a defendant may not obtain the exclusion of incriminating evidence seized by the police in the violation of the rights of a third party. *Murray* v. *United States,* 333 F.2d 409 (1964); *Williams* v. *United States,* 323 F.2d 90, 94, cert. denied, 376 U.S. 906 (1964); 44 Mod. Fed. Pract. Dig., Searches and Seizures § 7 (26).

The court, therefore, concludes that the seizure of the contraband beauty articles was a proper and legal seizure, as being incident to a lawful arrest.

### C. Are the Band-aids and Matches Taken From the Defendant Hill Lawfully Within the Custody of the Prosecution Authorities?

The testimony is not completely clear as to whether Hill voluntarily abandoned the band-aids and matches when he was questioned at police headquarters at approximately 8:30 a.m. on May 14, 1965. In any event, the interrogation of Hill and the request of him to put his belongings upon the table at police headquarters were pursuant to and contemporaneous with his arrest and the resulting investigation. *Weeks* v. *United States,* 232 U.S. 383, 392 (1914); *Agnello* v. *United States,* 269 U.S.

20, 30 (1925), approved in *Preston* v. *United States,* 376 U.S. 364, 367 (1964).

The court, therefore, concludes that the matches and band-aids are now properly within the custody of the prosecution authorities, as having been obtained as incident to a lawful arrest.

The motion to suppress, in all its aspects, is therefore denied.