UNITED STATES of America,
Plaintiff-Appellee,

v.

William T. WOODSON and John Gant,
Defendants-Appellants.

No. 14694.

United States Court of Appeals
Sixth Circuit.

May 15, 1962.

Robert E. Lillard, Nashville, Tenn. (A. A. Birch, Jr., Nashville, Tenn., on the brief), for defendants-appellants.

Carrol D. Kilgore, Asst. U. S. Atty., Nashville, Tenn. (Kenneth Harwell, U. S. Atty., Nashville, Tenn., on the brief), for plaintiff-appellee.

Before WEICK, Circuit Judge, and BOYD and THORNTON, District Judges.

PER CURIAM.

■ This is an appeal from a conviction of the defendants-appellants on both counts of an information charging them, in the first count, with being persons engaged in the business of accepting wagers and liable for the tax imposed by the Internal Revenue Code of 1954, and with wilfully failing and refusing to register with the Director of Internal Revenue; and charging them, in the second count, with accepting wagers and liable for the tax imposed by the Internal Revenue Code of 1954, and for failure to pay a special occupational tax, all in violation of Sections 4401, 4411, 4412, 7203 and 7262 of the Internal Revenue Code of 1954, 26 U.S.C.A. (I.R.C.1954) §§ 4401, 4411, 4412, 7203, 7262. In addition to the appellants, four other defendants were tried together on the same information and were also found guilty on both counts by a jury. A motion to suppress and return the evidence was filed on behalf of defendant Woodson before trial. The Trial Court reserved a ruling on this motion. At the end of the Government's proof a motion for judgment of acquittal was made as to all defendants. It was renewed at the conclusion of all of the testimony, and the Court reserved the ruling on the motion to await the verdict of the jury, subsequently denying the motion to suppress filed on behalf of Woodson, denying the motion for acquittal as to Woodson and Gant, and granting the same as to the four other defendants. On this appeal the defendants-appellants claim that the Trial Court committed error in not granting the motion to suppress the evidence— said motion being based upon the claim that the search warrant was issued solely upon information received from an unknown and unidentified informer. However, in addition to the information from the unknown informer to a known official of the Treasury Department[1] there was information from the said informer describing the automobile driven by appellant Woodson and describing the activities of 20 to 25 individuals in visiting the said premises nightly:

(1) To check up on the day's business;

(2) To exchange money on business previously turned in;

(3) To return "hit tickets" for the day's business.

Based on this information four Special Agents of the Treasury Department conducted surveillances during the period of May 17–June 1, 1960. The combined supporting affidavits of these four agents indicated that over the period of the surveillances 11 different automobiles were seen at or near the premises: 4 belonged to persons who had held Federal Gaming Stamps; 2 belonged to persons who had been arrested for lottery violations; 3 were registered in the names of persons with the same residential addresses as people who had either held Federal Gaming Stamps or had been arrested on lottery charges; 1 was owned by a person who had the reputation of being a "numbers" writer; and 1 had

---

1. that a numbers operation was being conducted on the premises at 830 Twelfth Avenue South, Nashville, Tennessee, between 5:30 P.M. and 10:30 P.M. by William Woodson and others.

been observed on an apparent "numbers" route. In addition to the foregoing, two of the four agents included information in their respective affidavits that they were experienced in observing persons engaged in the operation of numbers lotteries and in investigating violations of the Federal Wagering Tax Laws. The activity in and about the suspected premises of persons known to the agents as gamblers and numbers operators (as disclosed in the agents' affidavits) furnished substantial and detailed corroboration of the information furnished to the Bureau of Internal Revenue at Nashville, Tennessee, by the unknown informer, and served to establish this information as trustworthy. When, in addition to this information, the supporting affidavits of each of the four Special Agents disclosed their personal observations and investigations during a two-week surveillance period "there was put before the Commissioner" [2] sufficient evidence to establish probable cause to justify the issuance of the search warrant.

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. DeArmit, 99 Pa.St. 63, 69, quoted with approval in the Carroll opinion [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543], 267 U.S. at 161 [45 S.Ct. at 288]. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any

rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543].

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879.

The appellants also complain that the "daytime search warrant" was executed after sunset and was therefore illegal. At the trial it was conceded that on June 6, 1960, the date the warrant was executed, the sun set at 7:01 P.M. in Nashville, Tennessee. The return on the warrant established that it was executed at 7:20 P.M. However, the testimony revealed that it was still light enough to read a copy of the search war-

2. Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697.

rant by daylight, and the Trial Judge applied the test laid down in a number of decided cases including Atlanta Enterprises v. Crawford, 5 Cir., 22 F.2d 834 where it is stated at page 837 in the following language: "Daytime does not in law or by common understanding, begin at sunrise or end at sunset, but includes dawn at the one end and twilight at the other. The practical test given by the ancient authorities is the existence of sufficient light from the sun to recognize a man's features." In applying this test the Trial Judge found that the warrant was duly executed in the daytime in accordance with its limitations. This ruling was correct.

Appellants further claim that there was not substantial evidence to support the verdict of the jury finding them guilty of being "engaged in the business of accepting wagers." This claim relates to the evidence as to appellants acting in a proprietary capacity. In considering the testimony as it applies to appellant Gant, this defendant admitted the ownership of certain keys found in the table drawer on the premises at 830 Twelfth Avenue South. One of these keys unlocked a clothes closet located at the rear of this house which revealed the books of the gambling operation for an entire month and, further, he received a long distance telephone call while the search was in progress. During this telephone conversation Gant informed the caller that a raid was being conducted and that he should not call again. As to the defendant Woodson, he had numerous ribbons on his person and there was testimony that these ribbons were typical of those ordinarily found on a numbers banker. There was constant reference during the trial to one Clarence Reed as being the occupant of the questioned premises but no testimony as to the identification of Clarence Reed. However, a telephone bill addressed to Clarence Reed was found on the person of Woodson. Testimony further disclosed that a receipt was found on the person of Woodson for a large quantity of "K-books," which are the pads used in the writing of numbers tickets. A large quantity of these "K-books" was found just inside the back door of the premises being searched. At the time of the search Woodson had $1,530.79 in cash in his possession, and $3,791.27 in cash was found on a table in the room occupied by the defendants. Woodson filed a claim for all of this loose money found on the premises.

The evidence discloses that each defendant had either actual or constructive possession of part of the records used in the conduct of a numbers operation, that Woodson was involved in the purchase of equipment for the operation, that Gant exercised some control over the customers, and that Woodson claimed ownership of a large amount of cash (necessary in a numbers operation). This evidence was sufficient to take the case to the jury and to support the verdict as to both defendants. The judgment of the United States District Court is accordingly affirmed.