UNITED STATES of America,
Plaintiff,

v.

Charles R. GEBELL, Defendant.

Crim. A. No. 39167.

United States District Court
E. D. Michigan, S. D.

July 12, 1962.

Lawrence Gubow, U. S. Atty., William H. Merrill, Chief Asst. U. S. Atty., Detroit, Mich., for plaintiff.

James H. Hudnut, Detroit, Mich., for defendant.

THORNTON, District Judge.

On December 14, 1961 the United States District Court for the Eastern District of Michigan, issued a search warrant to search the premises known as 21748 Share, St. Clair Shores, Michigan, and described as a one story, brick veneer dwelling house with basement, including garage and appurtenances, located on the south side of Share Street, between Arrowhead Street and Harper Avenue in the Eastern District of Michigan. The search warrant and the affidavit of Special Agent Zawadzki submitted in support of the warrant allege that "there is now being concealed certain property; namely bookmaking records, wagering paraphernalia consisting of bet slips, run-down sheets, account sheets, recap sheets, telephones, money used in or derived from a bookmaking operation and other means and instruments used in violation of Sections 4411, 4412, 7203 and 7262, of the Internal Revenue Code of 1954 [26 U.S.C.A. §§ 4411, 4412, 7203, 7262]."

The affidavit of John T. Zawadzki, Special Agent, Internal Revenue Service, states that:

"The facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

"On or about November 8, 1961 I received confidential information, considered reliable, that a handbook operation was being conducted by

Charles R. Gebell in his residence at 21748 Share Street, St. Clair Shores, Michigan.

"On November 17, 1961 I examined the records of the Michigan Bell Telephone Company and determined that two telephones, PR 2–0569 and PR 5–6128 are installed at 21748 Share Street. Both are published. PR 2–0564 is listed to W. S. King and PR 5–6128 is listed to Charles R. Gebell. I examined the records of the District Director of Internal Revenue in Detroit and they disclosed no record of any tax return filed by W. S. King from this address. However a 1960 tax return was found for Charles R. Gebell. He listed his principal business activity as being Sporting Events; no other source of income was reported. During the period between November 13, 1960 [1] through December 13, 1961 surveillance was conducted on this individual. He or his wife were observed driving to establishments which sell racing forms. The establishments they visited are located at 14645 Gratiot, 14513 Eight Mile Road and 8051 Harper. These persons then returned to their home. Observations further disclosed that the vehicles owned by Charles R. Gebell were unmoved between the hours of 12:00 P.M. and 6:00 P.M. Charles R. Gebell's criminal record shows that he has been convicted for handbook activities.

"On December 14, 1961 I personally searched the records of the District Director of Internal Revenue, Detroit, Michigan, for all wagering stamps issued in the State of Michigan for the period July 1, 1961 to June 30, 1962. I did not find any record of the registration or issuance of a wagering occupational stamp to Charles R. Gebell. My search also disclosed that the premises known as 21748 Share, St. Clair Shores, Michigan being the residence of Charles R. Gebell, is not registered as business or residence addresses of wagering stamp holders.

"I also searched for Excise Tax Returns, Form 730, for each of the above named persons and addresses, but the records disclosed no record that the returns were filed."

The search warrant was executed on December 14, 1961 at 3:00 P.M., a copy being left with Mrs. Charles Gebell, and the inventory filed by the Special Agent discloses that the following property was taken pursuant to the warrant:

"21748 Share, Saint Clair Shore, Basement

2 Telephones
1 Envelope. Bet slips burned partially
1 Bag. Pads of paper
1 Bag. Cigar Box of tools, pencils, slips
1 Bag. Racing publications
1 Bag. Racing slips and pads of paper
 (Signed) Marvin R. Groh
 Special Agent
 (Signed) Mrs. Gebell —"

"*Inventory* Main Floor 21748 Share St. Clair Shores Michigan

a) Cash in the amount of $1137.00
b) One princess telephone
c) One Charles Gebell Police Record
d) Three Football Pool tickets
e) Miscellaneous sheets and papers with mathematical computations and telephone numbers
f) Three telephone directories
g) One envelope containing B.G.
 (Signed) Mrs. Gebell
 (Signed) John Hayes"

By motion for return of property and to suppress evidence, the defendant attacks the validity of the search warrant on two grounds:

"1. There was not probable cause for believing the existence of

1. It is obvious that the date should be November 13, 1961.

the grounds on which the search warrant was issued."

"2. The search warrant was illegally executed. * * *'"

In relation to the search warrant heretofore issued in this case, the Government urges that the opinion of the United States Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) is authority for upholding its validity.

In Jones v. United States, supra, pp. 267–268, 80 S.Ct. p. 734 the affidavit of the narcotics agent is set forth in a footnote as follows:

"Affidavit in Support of a U. S. Commissioners Search Warrant for Premises 1436 Meridian Place, N. W., Washington, D. C., apartment 36, including window spaces of said apartment. Occupied by Cecil Jones and Earline Richardson.

"In the late afternoon of Tuesday, August 20, 1957, I, Detective Thomas Didone, Jr. received information that Cecil Jones and Earline Richardson were involved in the illicit narcotic traffic and that they kept a ready supply of heroin on hand in the above mentioned apartment. The source of information also relates that the two aforementioned persons kept these same narcotics either on their person, under a pillow, on a dresser or on a window ledge in said apartment. The source of information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from the above mentioned persons and that the narcotics were secreated [sic] in the above mentioned places. The last time being August 20, 1957.

"Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have admitted to the use of narcotic drugs and display needle marks as evidence of same.

"This same information, regarding the illicit narcotic traffic, conducted by Cecil Jones and Earline Richardson, has been given to the undersigned and to other officers of the narcotic squad by other sources of information.

"Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasion and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [sic] in the above apartment by Cecil Jones and Earline Richardson.

"Det. Thomas Didone, Jr., Narcotic Squad, MPDC.

"Subscribed and sworn to before me this 21 day of August, 1957.

"James F. Splain, U. S. Commissioner, D.C."

Speaking for the Court Mr. Justice Frankfurter stated in part as follows:

"The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 268–269, 80 S. Ct. 735.

 The affidavit supporting the search warrant here in controversy contains the naked statement that "on or about November 8, 1961 I received confidential information, considered reliable, that a handbook operation was being conducted by Charles R. Gebell in his residence at 21748 Share Street, St. Clair Shores, Michigan." The said statement is barren of documentation by its author—what facts supported his conclusion that a handbook was in

operation at the named premises—that would fulfill the requirement enunciated in Jones v. United States, supra, that "a substantial basis for crediting the hearsay" be presented. A comparison of the affidavit in the Jones case with that in our case produces a striking contrast rather than a close similarity insofar as substance is concerned to such an extent that the Jones opinion is rendered irrelevant and the rationale inapposite to the issue here for determination. The Jones opinion is not authority for validating the affidavit here in issue based on the sufficiency of the information supplied by an informer. Because of this we must consider the additional allegations in the affidavit of the Special Agent to ascertain whether they are sufficient to justify the issuance of a search warrant.

### ADDITIONAL ALLEGATIONS

■ 1. The fact that there were two telephones installed in the premises each with a different number, both published (one in the name of W. S. King and one in the name of Charles R. Gebell) in and of itself, without explanation or connection with their actual or potential use, does not provide probable cause for believing that a handbook operation was present at the premises.

■ 2. The fact that the records of the Internal Revenue Office failed to disclose than an income tax return was filed by W. S. King from these premises does not provide probable cause to believe that a handbook was in operation. This fact does not even establish that King either did, or did not, live at this address.

3. The fact that Gebell, in his income tax returns, listed his principal business activity as being "Sporting Events" establishes nothing more or less than just that—a very broad field, to say the least.

4. The fact that "a surveillance was conducted on this individual" between November 13, 1960 [2] and December 13, 1961, and that Gebell and his wife were observed driving to establishments which sell racing forms (visiting three such establishments) and thereafter returning to their home, instantly gives rise to such relevant questions as what other articles of trade these establishments might have offered for sale to the general public, and what items, if any, Mr. and/or Mrs. Gebell did actually buy during the aforesaid visits to these establishments. Answers to these questions are, of course, purely conjectural. To illustrate: If a person enters a drug store where narcotics are dispensed on prescription, a law enforcement officer is not thereby furnished with probable cause to believe that said person is a peddler of narcotics or a narcotic addict. The affidavit here in issue is uninformative as to who conducted the particular surveillance. Whether or not the information is pure hearsay is also a matter of conjecture.

5. The recitation in the affidavit that "Observations further disclosed that the vehicles owned by Charles R. Gebell were unmoved between the hours of 12:00 P.M. and 6:00 P.M." is subject to the legal infirmity as to the source of the observations. This statement also is uninformative as to the number of days the cars remained "unmoved", where the cars were parked, and what relationship such a condition bears to a handbook operation.

6. The fact that Charles R. Gebell's criminal record shows that he has been convicted previously for handbook activities in and of itself establishes only that he has a criminal record for handbook activities.

So that there will be no misapprehension about the foregoing analysis of the contents of the affidavit, we state here that we are fully aware that "fly specking" can be performed on many factual situations and the collective value of the facts thus be destroyed. This is not the

2. It is obvious that the date should be November 13, 1961.

intention of this Court. Standing alone, the various incidents related in the affidavit have little if any value in supplying the ingredients necessary to constitute probable cause. Taken collectively, as they must be, and assuming the absence of legal infirmities, such as hearsay, they do not on any logical basis provide probable cause for believing that on December 14, 1961 there was concealed in the dwelling at 21748 Share Street, St. Clair Shores, Michigan, occupied and controlled by Charles R. Gebell, bookmaking records, wagering paraphernalia consisting of bet slips, run-down sheets, account sheets, recap sheets, money used in or derived from a bookmaking operation and other means and instruments used in violation of Sections 4411, 4412, 7203 and 7262, of the Internal Revenue Code of 1954.

The affidavit in issue was submitted to the Court in conjunction with and in support of an application for a warrant to search the premises at 21748 Share Street, St. Clair Shores, Michigan. In reviewing the contents of the affidavit we find that the only reference therein to these premises consists of the statement that they contained two telephones published in the names of two different people. Such a fact is in no way either actually or potentially tied into any handbook operation. No other activity or condition relating to these premises is set forth in the affidavit. The contents of the affidavit in this case are not such as to constitute probable cause, as it is defined in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. In view of this conclusion we do not reach the question of the legality of the execution of the search warrant.

In making this determination the Court is not unmindful of the problems with which Special Agents are confronted in enforcing the Internal Revenue laws pertaining to the operation of handbooks. The solution, however, would appear to be a legislative function rather than a judicial one.

The motion to suppress the evidence is granted.