UNITED STATES of America, Plaintiff,

v.

Nicholas BOSCH, Defendant.

Crim. No. 39168.

United States District Court
E. D. Michigan, S. D.

Sept. 13, 1962.

William H. Merrill, Chief Asst. U. S. Atty., Detroit, Mich., for the Government.

Robert E. Toohey, Detroit, Mich., for defendant.

FREEMAN, District Judge.

The defendant, Nicholas Bosch, is accused by indictment of failure to register

and pay a special tax imposed on persons engaged in the business of accepting wagers, in violation of Sections 4411, 4412 and 7203, Title 26 U.S.C., and has filed a petition to suppress and return evidence consisting of gambling paraphernalia seized and removed from his residence at 27931 Gladstone Street, St. Clair Shores, Michigan, in the execution of a search warrant issued by a Judge of this Court on December 14, 1961, and to dismiss the complaint and warrant for his arrest on such charges issued the same date.

He contends that the search warrant was issued without probable cause in violation of the Fourth Amendment to the Constitution and Rule 41(c) of the Federal Rules of Criminal Procedure, 18 U.S.C. and that it was executed in violation of Section 3109, Title 18 U.S.C.

The issuance of the search warrant was based on an affidavit made by a special agent of the Internal Revenue Service, stating that the affiant had reason to believe that certain gambling paraphernalia "consisting of bet slips, run-down sheets, account sheets, recap sheets, telephones, money used in or derived from a bookmaking operation, and other means and instruments" used in the violation of the aforesaid statutes was being concealed on the above described premises of defendant and, in support of such belief, alleged pertinent facts substantially as follows:

1. During the period of November 13, 1961, through December 13, 1961, the defendant was seen entering and departing from the premises at 23334 Lakewood, Clinton Township, Michigan, occupied by a previously convicted and presently suspected bookmaker, one Charles Gorman.

2. The defendant "has been observed" by affiant and other unnamed law enforcement officers under his direction in a certain sequence of events consisting of purchasing racing forms at 14513 East 8 Mile Road, Warren, Michigan, and then driving to Gorman's residence at 22640 Downing Street, St. Clair Shores, Michigan, whereupon he entered these premises and returned to his car in the company of Gorman; that these two men then drove to the premises at 23334 Lakewood, whereupon Gorman, on arrival, entered such premises and the defendant then proceeded to the corner of Lakewood and Harper where he regularly met one Lyle Clune, who had been observed by the officers visiting 23334 Lakewood during the observation period of November 13th to December 13th. At these meetings between Clune and the defendant, the former was observed passing to the latter a paper "resembling" a Daily Racing News used by bookmakers accepting horse wagers, with Clune then proceeding by himself to the Lakewood address, and the defendant, after having stopped at various taverns, returned home where he remained from about noon until 6:00 P.M. or later.

3. The affiant searched the records of the Detroit District Director of Internal Revenue and found no record which indicated that a wagering stamp had been issued to the defendant or that he had registered his residence at the above address as that of one to whom such a stamp had been issued, or that he had filed an excise tax return.

The Fourth Amendment prohibits the issuance of a search warrant, "but upon probable cause, supported by Oath or affirmation". Procedure for issuance of a search warrant pursuant to Rule 41(c) of the Federal Rules of Criminal Procedure provides that the warrant shall issue on affidavit "If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe that they exist * * *."

Probable cause has been interpreted and defined by the Supreme Court in Brinegar v. United States, 338 U.S. 160, at pp. 175–176, 69 S.Ct. 1302, at p. 1310, 93 L.Ed. 1879, as follows:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal tech-

nicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa.St. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. [132] at 161 [45 S.Ct. 280, 69 L.Ed. 543]. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]."

The Sixth Circuit Court of Appeals in the recently decided gambling tax cases of United States v. Woodson, 303 F.2d 49, and United States v. Nicholson, 303 F.2d 330, in considering the sufficiency of affidavits on which warrants were based and issued, relied largely on the test of probable cause laid down in Brinegar, and in Nicholson the Court said: "Whether probable cause exists requires an act of judgment formed in the light of the particular situation and with account taken of all the circumstances."

▉ It is also well-established that hearsay may be the supporting basis for a search warrant where there is either some corroboration of the hearsay or where the circumstances are such that there is substantial basis for crediting the hearsay. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

Applying the standards laid down in these authorities to the affidavit here in question, it is clear that the warrant based thereon was not legally issued. In reaching this conclusion, all the facts alleged pertaining to defendant and his premises have been considered and applied even though the affidavit fails to clearly indicate whether such averments were hearsay or within affiant's own knowledge. For this reason we do not reach the problem of finding a proper basis for crediting hearsay.

▉ The existence of probable cause requires a decision in the light of the particular situation, taking into account all the circumstances. United States v. Nicholson, supra. This can only be determined by a careful consideration of what relevant facts are not stated in the affidavit, as well as those that are alleged. Affiant states that the premises at 23334 Lakewood were under surveillance for one month, but fails to allege the date or dates or how may times the defendant was seen at such premises on Lakewood or how often or at what times defendant drove Gorman to the Lakewood address and then met Clune. There is only the conclusional statement that the defendant regularly met Clune at a certain location.

It should be noted that affiant placed considerable emphasis on telephone installations and activity alleging that there were 2 telephones at Gorman's Lakewood property, one of which was unlisted, and that a large number of long distance calls to and from an alleged bookmaker in Houston, Texas, were charged to the unlisted phone, and that there were two unlisted telephones at the Betz residence. However, the affidavit is conspicuously silent as to any phone, listed or unlisted, in defendant's home. It seems unlikely that a gambling or bookmaking operation could be conducted on premises not having a telephone.

The search of defendant's premises was one of several conducted simultaneously on the same date. The warrants for two of these premises involved in United States v. Betz, D.C., 205 F.Supp. 927 and United States v. Gorman and Clune, 208 F.Supp. 747, were based on the

same affidavit as that in the instant case, and another, United States v. Gebell, 209 F.Supp. 11 was based on a separate affidavit made by the same affiant. In Betz and Gebell, Judge McCree and Judge Thornton of this Court respectively found no probable cause for issuance of the warrants, where the affidavit alleged, in addition to other facts and circumstances, that there were two unlisted phones at the Betz premises and two telephones at the Gebell premises, one listed in Gebell's name and the other listed under another name. In Gorman and Clune, Judge Machrowicz of this Court found probable cause for issuance of the warrant to search the Gorman premises where the affiant alleged additional data as well as the installation of one listed and one unlisted phone and considerable activity to and from the unlisted phone, including the telephone of a convicted hand-book operator in Texas. This Court agrees with the conclusions reached in excellent opinions filed in all of these companion cases. Also see United States v. Nicholson, supra, where the affidavit stated, among other circumstances, that there were three telephones at the premises, two of which were listed under the name of an alias sometimes used by defendant, and that there were numerous long distance calls to and from bookmakers in other States made and received from such phones.

The cases cited by the Government in support of its position involve a surveillance of the searched premises which either disclosed that the suspects were conducting themselves very suspiciously in an abandoned grocery store, Merritt v. United States (C.A. 6), 249 F.2d 19, or that the suspects were carrying paper bags of the size and type commonly used for transporting gambling paraphernalia to and from the premises, Clay v. United States (C.A.5), 246 F.2d 298, or that the suspects had bulging pockets and carried cartons, boxes and paper bags as they entered and left the premises, United States v. Bell (D.C.Dist. Columbia), 126 F.Supp. 612. See also United States v. Woodson, supra, 303 F.2d 49, finding probable cause where the affidavit recited that a two-week surveillance of the searched premises disclosed that individuals who possessed gambling stamps or who had been arrested on lottery charges or who had resided at the same address as those in the first two categories regularly visited such premises.

█ It is generally recognized that a factor in determining probable cause for the issuance of a search warrant is the time that elapses between the date of the observed offense and the making of the affidavit upon which the warrant is based. Rupinski v. United States (C.C.A. 6), 4 F.2d 17; United States v. Nichols (D.C.W.D.Ark.), 89 F.Supp. 953; United States v. Allen (D.C.E.D.Kentucky), 147 F.Supp. 955; United States v. Long (D.C.District Columbia), 169 F.Supp. 730; see, also, 162 A.L.R. 1406 for a general discussion of the cases and their respective facts.

█ In the instant case the surveillance of defendant's home did not reveal any activity whatever at the premises except that defendant remained home from noon until 6 P.M. or later. The affidavit is silent as to when the surveillance was made. For this reason alone, such averment cannot be considered. In any event, such alleged observation did not disclose any acts usually associated with a gambling business such as persons coming and going, cars parked in the immediate vicinity, packages carried to and from the premises, etc.

█ While the failure to have a wagering stamp or to register his address or to file an excise tax return would justify affiant's belief that any gambling activity at defendant's residence was illegal, it adds nothing to support the belief that the premises were being used for a bookmaking operation or some other gambling business.

This Court concludes that the search warrant for defendant's premises was issued without probable cause and the evidence seized in the execution thereof should be suppressed. Having reached this conclusion, it is unnecessary to de-

cide the question of the legality of the execution of the warrant.

■ However, defendant's motion for return of property seized pursuant to the execution of such warrant and used in violating the wagering tax laws must be denied. 26 U.S.C.A. § 7302 makes it unlawful "to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property." This statute applies to property used in violating the federal wagering tax laws. United States v. General Motors Acceptance Corp. (C.A. 5), 239 F.2d 102; United States v. Macri, D.C., 185 F.Supp. 144.

In Bourke v. United States, 44 F.2d 371, the Sixth Circuit adopted the view that illegally seized contraband liquor ought not be returned to the defendant, but should be declared forfeit, since no property right could exist therein under the National Prohibition Act, 27 U.S.C.A.

The Supreme Court in United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, held that illegally seized narcotics being contraband, and Congress having declared "no property rights shall exist" therein, defendant was not entitled to the return thereof.

In United States v. Carey (C.A. 5), 272 F.2d 492, at pp. 493–494, the Court said:

"There is a proper distinction between obtaining evidence for a criminal prosecution and a seizure of forfeited property under Internal Revenue laws. Thus, in Grogan v. United States, 5 Cir., 1958, 261 F.2d 86, 87, certiorari denied 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed.2d 677, this Court stated:

" 'The seizure of property, the title to which has been forfeited to the United States, is to be distinguished from the exclusion of evidence secured through an unlawful search and seizure. In the one case

the Government is entitled to the possession of the property, in the other it is not.' "

Also see United States v. Eight Boxes, etc. (C.A. 2), 105 F.2d 896; United States v. Macri (supra), D.C., 185 F. Supp. 144; United States v. General Motors Acceptance Corp. (supra), (C.A. 5), 239 F.2d 102.

Defendant also seeks to have the complaint and warrant issued for his arrest dismissed and to suppress any evidence obtained as a result of the arrest on the ground that his arrest was illegal because the complaint did not meet the probable cause requirements of the Fourth Amendment and Rule 4(a) of the Federal Rules of Criminal Procedure and did not allege "the essential facts constituting the offense charged" as required by Rule 3.

The Government argues that there was probable cause for issuance of the arrest warrant based on the contents of the complaint and the affidavit submitted in support of the search warrant and, in any event, there was probable cause to arrest defendant without a warrant since the test for probable cause in the latter situation is not necessarily the same as that required for the issuance of a search warrant.

■■ An arrest warrant shall be issued only upon a written and sworn complaint (1) setting forth "the essential facts constituting the offense charged" (Rule 3), and (2) showing "that there is probable cause to believe that (such) an offense has been committed and that the defendant has committed it * * *" (Rule 4(a)). These provisions of the Rules must be read in light of the Fourth Amendment's command that " * * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing * * * the persons or things to be seized", since the Fourth Amendment applies to arrest warrants as well as search warrants. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

■ Having already decided that the affidavit of the special agent did not es-

tablish probable cause for issuance of the search warrant, it likewise fails, for the same reasons, to sustain the arrest warrant. In any event, such affidavit is not a part of the complaint, the validity of which must be determined from its face.

"Here, in the absence of an indictment, the issue of probable cause had to be determined by the Commissioner, and an adequate basis for such a finding had to appear on the face of the complaint." Giordenello v. United States, supra, at p. 487, 78 S.Ct. at p. 1250.

 In the instant case, the complaint did not allege essential facts "constituting the offense" as required by Rule 3.[1] It does not provide any basis for determining probable cause as required by the Fourth Amendment and Rule 4 (a). In the language of Justice Harlan in Giordenello, at p. 486, 78 S.Ct. at p. 1250, "it does not pass muster because it does not provide any basis for the Commissioner's determination under Rule 4 that probable cause existed." In the instant case, as in Giordenello, the complaint contains (1) no affirmative allegation that the complainant spoke with personal knowledge, and (2) only conclusions constituting the elements of the offense charged. In considering the sufficiency of the warrant challenged on these grounds, the Court in that case said:

"But we need not decide whether a warrant may be issued solely on hearsay information, for in any event we find this complaint defective in not providing a sufficient basis upon which a finding of probable cause could be made." (p. 485,) 78 S.Ct. p. 1249.

 It is also clear that there was no probable cause to make an arrest without a warrant. A rule that would require less to establish probable cause to act without a warrant could render meaningless the protection of the Fourth Amendment, since police officers would not likely assume the heavier burden of showing probable cause by seeking a warrant. See Jones v. United States, 362 U.S. 257, at p. 270, 80 S.Ct. 725, 4 L.Ed. 2d 697. In that case involving the sufficiency of an affidavit supporting a search warrant, the Court stated (p. 270, 80 S.Ct. p. 735): "What we have ruled in the case of an officer who acts without a warrant governs our decision here."

 It is well settled that an article taken from an individual on the occasion of an illegal arrest is not admissible in evidence against him, although it is relevant and entirely trustworthy as evidence. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Bynum v. United States, 104 U.S.App. D.C. 368, 262 F.2d 465. Again, if the police obtain a statement from an accused person during his illegal detention, such statement is inadmissible, although it may be a trustworthy and patently relevant voluntary statement. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; Bynum v. United States, supra.

The policy behind the exclusionary rule was aptly put by the Supreme Court in Mallory at p. 456 of 354 U.S., at p. 1360 of 77 S.Ct.:

"It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.' "

This Court concludes that there was no probable cause either for the issuance

---

1. The complaint in support of the warrant states:

"Nicholas Bosch did accept wagers and engage in the business of receiving wagers, for profit, with respect to sports events or contests; and failed to purchase a special tax stamp and to register as a person engaged in the business of accepting wagers, with the Director of Internal Revenue, Detroit, Michigan, or any proper officer of the United States; And the complainant states that this complaint is based on (blank space). And the complainant further states that he believes that (blank space) are material witnesses in relation to this charge."

of the arrest warrant or for the arrest of the defendant without a warrant, and, consequently, the complaint and warrant should be dismissed and any evidence obtained pursuant to such illegal arrest shall be suppressed.

An appropriate order may be submitted.