**UNITED STATES of America,
Appellee,**

v.

**Charles CHRAMEK, Appellant.**

**No. 9056.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1964.

Decided April 14, 1964.

Paul T. McHenry, Jr., Baltimore, Md.
(Joseph A. DePaul and Keane, DePaul
& Willoner, Hyattsville, Md., on brief),
for appellant.

Benjamin A. Civiletti, Asst. U. S.
Atty. (Thomas J. Kenney, U. S. Atty.,
and J. Edward Davis, Asst. U. S. Atty.,
on brief), for appellee.

Before SOBELOFF, Chief Judge, and
BRYAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

The appellant Chramek was one of four
defendants convicted by the district court
sitting without a jury on the first three
counts of a four count information which
charged them jointly with engaging in,
and/or aiding and abetting in wagering
and bookmaking without complying with
the laws relating thereto.[1] On this appeal two questions are raised: the sufficiency of the evidence to support the con-

---

1. The four counts charged:

(1) That the defendants were liable
for but failed to pay the special wagering occupational tax. 26 U.S.C.A. §
4411; 18 U.S.C.A. § 2.

(2) That defendants wilfully failed to
pay the tax prior to engaging in business. 26 U.S.C.A. §§ 4901, 7203; 18
U.S.C.A. § 2.

(3) That the defendants failed to register with the District Director of Rev-

viction and the court's refusal of a separate trial. On both we find no error.

Surveillance of the defendants' activities began the latter part of June 1961. Agents of the Internal Revenue Service observed that three of the defendants, Waldow, Gabardini and Johnson, met regularly at a lunchroom late each morning where they distributed horse racing scratch sheets. From there, the men went to a residence located about half a mile away. On a number of occasions between June and November the agents observed Gabardini, Johnson and others entering and leaving the residence carrying the usual gambling paraphernalia: slips of paper, packages, and brown paper bags. The activity took place during the hours of the day when gambling operations normally take place. During October the same activities by Gabardini, Johnson and others were observed at the Stonegate Apartment, which was located nearby. Immediately adjoining the Stonegate was another apartment building, the Continental, where the agents also observed Waldow and Johnson together or in company with others entering and leaving. From the hall outside the Continental Apartment the agents heard bets being taken, adding machines operating, and other indicia of wagering. The agents also observed the appellant Chramek enter the Continental carrying a brown canvas bag on the 25th of October 1961.

On December 1, 1961, the agents raided all three of the premises, in all of which they seized gambling paraphernalia. In the Stonegate Apartment they found Gabardini and Johnson; in the Continental, Waldow and Chramek. In order to gain entrance to the Continental Apartment the agents, armed with search warrants, kicked in the door when they received no answer. Upon entry Chramek was seen seated at one of two tables on which were spread several Armstrong racing sheets, numerous betting slips, number slips, two telephones, and an adding machine and money. Waldow was standing near the other table. On the wall behind the tables were clip boards containing betting information. In the apartment was found the brown canvas bag which Chramek had been seen with in October. Upon being questioned, Chramek stated that he had been working there in the apartment for six months. He stated that the $1,000.00 found in the brown bag was payoff money which he planned to deliver at the end of his day's work. He told the agent that the operation grossed about $400.00 per day; that he knew about the occupational wagering tax but had not paid it because to do so would have exposed him to local authorities. Other evidence at the trial clearly disclosed that Johnson was the lessee of both apartments and the landlady of the Continental testified that she had seen both Waldow and Johnson entering and leaving the apartment together on numerous occasions. Chramek claimed that he was merely a pickup man—a salaried messenger working for $75.00 a week—but refused to name his principal.

■■ We think there was ample evidence to support the court's finding that Chramek was engaged in receiving wagers—if not for himself then on behalf of others.[2] The fact that the agents observed him sitting at a table covered with gambling paraphernalia, with telephones ringing, justified, indeed demanded, the inference that he was receiving wagers. Chramek himself told the officers that he had been working there at the apartment for six months. There were two telephones, both of which con-

---

enue, 26 U.S.C.A. § 4412; 18 U.S.C.A. § 2.

(4) That the defendants wilfully failed to supply the information required by 26 U.S.C.A. §§ 4412, 7203; 18 U.S.C.A. § 2.

2. In United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), the Court made it clear that a "writer" (an agent who accepts wagers from bettors) is subject to the special occupational tax. The fact that Chramek also may have acted as a pickup man is immaterial.

tinued to ring while the raid was in progress. When the agents answered the telephones, bets were placed. It was a reasonable inference that Chramek, who was in his shirt-sleeves, was answering one of them and Waldow the other and that they were receiving wagers. Chramek's admissions to the agents showed a knowledge of the business greater than would be expected of a messenger. This evidence, together with his admission that he knew of his liability for the occupational tax and that he had not paid it for fear of exposing himself to prosecution by local officers is sufficient evidence to support his conviction. United States v. Woodson, 303 F.2d 49 (6 Cir. 1962).

■ We now come to the question of whether the court should have granted a severance on the motion of Waldow and Chramek at some time during the trial. Rule 13 of the Fed.R.Crim.P. provides that defendants may be tried together if they may be joined in a single information. Rule 8 provides that they may be joined in a single information "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 provides that the court may in its discretion sever if an improper joinder is made. Preliminarily, we note that District Judge Chesnut in a pre-trial hearing covering over 300 pages carefully considered this question together with motions to suppress. He declined the motion to sever without prejudice to its being renewed during the trial. We think the trial court did not abuse its discretion in refusing to sever.

■ There was ample evidence to support the inference that the activities going on at all three places were part of one series of transactions. Johnson was obviously a participant throughout in all of the activity. His close relationship with Waldow continued from the beginning. The idea, advanced by counsel, that Johnson was "friendly competition" with Waldow and/or Chramek is hardly compatible with the evidence that Johnson leased the Continental and paid for the furnishings and other expenses. It is a reasonable inference that as the business outgrew the residence and was moved to the apartment buildings, the owners did not want to draw the attention of the other tenants by having too much activity at one site and consequently leased the two apartments in adjoining buildings. Finally, the evidence disclosed, as conceded by counsel for Chramek in his brief, that the paraphernalia seized at the Continental where Chramek was found was much greater in amount than that discovered in either the other apartment or the residence. It is, therefore, a reasonable inference that here was the principal headquarters of the combined operation. Although in the absence of records which were required by the law, the Government failed to produce any evidence of an internal nature disclosing the financial connection between the operations at the three premises, we think the close and long association of the defendants and the physical proximity of all three premises justified the trial court's conclusion that the activities were all a part of one transaction or series of transactions. Thus, the joint information being clearly proper, it was incumbent on the defendant to make such a showing of prejudice as to provoke the discretionary remedy provided in Rule 14. Gorin v. United States, 313 F.2d 641 (1 Cir. 1963). No such showing was made here. There were only four defendants. It is not even suggested that the trial court could have had any difficulty in applying the independent evidence to each defendant's conduct. United States v. Lev, 22 F.R.D. 490 (S.D.N.Y.1958). Under the circumstances of this case, no justification can be found for putting the Government to the expense and delay of separate trials.

Affirmed.