J. Irwin Shapiro, J.
Defendants moved “for an Order granting the following relief:
“1. Declaring Section 177, Subdivision 1, of the Code of Criminal Procedure of the State of New York, if invoked for the instant arrest, unconstitutional;
“ 2. Declaring Section 813, Subdivision C, of the Code of Criminal Procedure of the State of New York, unconstitutional;
“ 3. Directing the Prosecution to bear the burden of refuting the contents of these moving papers;
“ 4. Directing that the search warrant utilized in the within case, be deemed controverted and declared void and a nullity, and that, additionally, the evidence seized by the police officers be suppressed
The motion was granted to the extent of ordering a hearing at which the following facts were developed: Armed with a search warrant, the police arrested the defendants on February 13, 1964, at 2:10 p.m., in premises 108-11 43rd Avenue, in the County of Queens. In executing the warrant, the officer, instead of going directly to the front door (the only door through which he had ever seen either defendant exit or enter), walked up the private driveway into the private back yard and allegedly made observations of the defendants through a kitchen window before entering the premises. Upon entering, he seized defendants’ Exhibit B, a slip containing numbers which was lying on a table, and defendants’ Exhibit C, 11 more slips with numbers, which were found in Taddeo’s pocket.
The warrant for the search of those premises and of the persons of the defendants had been obtained upon an affidavit of a police officer which reads:
“ 1. I am a police officer assigned to the 17th Division. NYPD.
“2. I have information based upon personal observations made by me that one, Thomas Coseia residing at 108-11 43rd Avenue, Corona, Queens, who is known to me and who has been previously arrested for violation of 986 Penal Law on November 2, 1963, is enagaged in illegal bookmaking activities in violation of section 986 and 986-b of the Penal Law together with an unknown male, white, 25-30 yrs, approximately 5' 9", 175 lbs, medium complexion, black hair herein after known as “ John Doe ”, a fictitious name.
“ On February 10, 1964, between 12:30 p.m. and 2:05 p.m., I observed Coseia emerge from his residence, enter his 1955 black Plymouth sedan #1591 QK (NY64) and proceed to 111th Street and 43rd Avenue. Upon arriving thereat Coseia did park but remained in the vehicle. Shortly thereafter he was approached by an unknown male white who did have a short conversation with him. During the conversation the unknown male did hand Coseia several slips of paper which he accepted and perused whereupon he did *980 receive money in bill form which he did count and proceed to make notations on a slip of paper with a pen. After the transaction, Coseia left the area and proceeded to Corona Avenue and 108th Street. Upon arrival thereat he again parked his vehicle and remained therein. Shortly thereafter another unknown male white approached the auto, engaged Coseia in a brief conversation and handed his slips of paper which he accepted and perused. After an exchange of currency in bill form, Coseia then left the location and proceeded to his residence. Approximately 5 minutes later after he did so, “ John Doe ” arrived and entered Coscia’s residence and while in the hallway thereat did have a conversation with Coseia during which time Coseia did hand him a packet of paper which he accepted, perused and placed in his jacket pocket and departed.
“ On February 11, 1964, I again observed Coseia leave his residence at about 12:35 p.h. enter his auto and proceed to vicinity of 111th Street & 43rd Avenue whereupon he parked his auto. The same unknown male again approached the vehicle wherein Coseia was seated engaged him in a short conversation and did hand Coseia slips of paper together with money in bill form which Coseia accepted, perused and placed same in his auto. He then made notations on a pad of paper with a pen and left the area. Upon leaving this location he proceeded to Corona Avenue & 198th Street and again parked his vehicle while remaining therein. He was again approached by a second unknown male who handed him slips of paper together with money in bill form. After a short conversation he perused same and counted the money and then departed. Coseia then proceeded to his residence and entered. After approximately 5 minutes the same “John Doe” entered Coseia’s residence and in the hallway thereat accepted a packet of * '* *.
“3. Based upon the foregoing reliable information and upon my personal knowledge there is probable cause to believe that such property written! records of horsebets, pads, pens, pencils and other paraphernalia commonly used in violation of Section 986 and 986b Penal Law and may be found in the possession of Thomas Coseia 108-11 43rd Avenue, Corona, & “John Doe” previously described above or at premises 108-11 43rd Avenue (1st floor apt) or 1955 Plymouth, black, sedan #1591QK”.
Among a number of other contentions, the defendants maintain that the affidavit for the warrant, on its face ‘ ‘ does not spell out sufficient reasonable and probable cause — as to both defendants ” and therefore the warrant should be set aside and the items seized thereunder should be repressed.
In light of what I consider to be the applicable law, I find it necessary to consider only that one contention of the defendants.
In People v. Fino (14 N Y 2d 160), the defendants were convicted of the ■ crime of book-making on the basis of evidence seized pursuant to a search warrant. The motion of the defendants, made prior to the trial, to suppress the evidence so seized on the ground that the search was issued without a sufficient showing of probable cause was denied.
The Court of Appeals, citing People v. Marshall (13 N Y 2d 28, 31), reversed the judgment of conviction solely because *981 the quantum of proof necessary for a showing of probable cause to warrant the issue of a search warrant was lacking.
In the Marshall case the court delineated the minimum requirements of an affidavit to be used in support of a search warrant, saying (pp. 34-35): “ Probable cause exists when there is reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious man in the belief that the law is being violated on the premises to be searched (Carroll v. United States, 267 U. S. 132; Dumbra v. United States, 268 U. S. 435; Aderhold v. United States, 132 F. 2d 858). It is not a matter for technical rules or tight and exact definition. The question always is: what in the common judgment of reasonable men would be regarded as good, sound cause, remembering that ice seelc only probable, not absolute cause? * * * Whether probable cause is present in a particular case must be determined from the facts of that case (United States v. Ramirez, 279 F. 2d 712, 714, cert. den. 364 IT. S. 850). (Emphasis supplied.)
In the Fino case (supra) the affidavit which was held insufficient to warrant the issuance of a search warrant permitted the drawing of more incriminating inferences than the affidavit in the instant case. It recited among other things (pp. 161-162):
“ That your deponent has been conducting an investigation relative to gambling being carried on at the above premises [556 Lakeview Avenue in the Town of Orchard Park, Erie County, New York].
“That on April 25, 1962 your deponent observed one James Faliero, a known gambler, whose true name is Mariano Faliero, B P D No. 36771, entering the said premises * * *.
“ That on April 26, 1962, your deponent, and other investigators working with deponent, observed the said James Faliero again entering said premises. That the said James Faliero was arrested * s * for failure to have a gambler’s stamp. * *• *
“Premises described as 556 Lakeview Avenue in the Town of Orchard Park, Erie County, New York, is a 1% story, split level, brick and frame dwelling listed to Aldo Dalimonte.
“ That these observations were made during the normal bookmaking hours.
“ That on June 11, 1962, at approximately 11:45 a.m. your deponent observed one Anthony B. Nasca, a known bookmaker, B P D #32368, * * * entering premises at 556 Lakeview Avenue * * * in the company of Anthony Fino, another known bookmaker, B P D No. 54413. Both named individuals were dropped off by an unknown white male, operating a * * * 1956 Cadillac, green and white, IB-9304, New York State Registration listed to Anthony B. Nasca * '* *. Both individuals remained there.
“ That on June 12, 1962, at approximately 11:55 a.m. your deponent observed again Nasca and Fino dropped off by the same Cadillac above described, both entering said premises at 556 Lakeview Avenue * * *.
“That on June 13, 1962, at 12 noon, your deponent, together with another investigator “ observed the said Anthony Fino and Anthony Nasca *982 entering premises at 558 Lakeview Avenue * * *. On each of said occasions, June 11, 12 and 13th, each of the individuals were carrying large envelopes.
“ That based upon the above observations there are reasonable grounds for believing that the said premises at 556 Lakeview Avenue * * ®, are being used for the purpose of violating Section 973, 986 and 986-B of the Penal Law * * *.
“ There are two non-listed telephones at the premises, 556 Lakeview Avenue ”,
In deciding that prohable cause for the issuance of a warrant ‘ ‘ involves not merely a question of fact but rather a mixed question of fact and constitutional law ” Judge Scileppi, writing for the majority of the court, said (p. 163):
‘1 In the instant case, assuming the facts as set forth in the affidavit here to be true, as we must, we conclude that observations by police officers of several allegedly known book-makers entering on various occasions a private dwelling wherein there were located two unlisted telephones, and nothing more, does not rise above a bare suspicion that the crime of book-making was being committed on the premises.
“ In cases involving substantially similar facts, viz., observation of known book-makers entering a private dwelling wherein several telephones were located, the courts have consistently held that such a showing was not sufficient to establish probable cause (see, e.g., United States v. Gebell, 209 F. Supp. 11; United States v. Bosch, 209 F. Supp. 15; United States v. Bets, 205 F. Supp. 927; United States v. Price, 149 F. Supp. 707; United States v. Johnson, 113 F. Supp. 359 * * *.) ”
In our case we are not dealing with a ‘1 known gambler ’ ’, or a “ known book-maker ”, or with observations of such persons made during “ normal book-making hours ” (see, Fino dissent), and if the events recited by the police as having been observed by them in the Fino case did 1 ‘ not rise above a bare suspicion that the crime of book-making was being committed on the premises ’ ’, the affidavit here must be deemed woefully insufficient to act as a lawful predicate for the issuance of the search warrant for it does not, so tested, show “ a reasonable ground for belief of guilt ” (Brinegar v. United States, 338 U. S. 160, 175) or that “ the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched ” (Dumbra v. United States, 268 U. S. 435, 441) or that there was 1 ‘ reasonable ground of suspicion supported by facts and circumstances strong enough. in themselves to warrant a cautious man in the belief that the law is being violated on the premises to be searched ” (People v. Marshall, 13 N Y 2d 28, 34, supra; Carroll v. United States, 267 U. S. 132; Henry v. United States, 361 U. S. 98).
*983 Hence, the warrant in this case was issued in violation of section 793 of the Code of Criminal Procedure, which so far as is here material, provides that “ A search warrant cannot be issued, but upon probable cause, supported by affidavit”. Its invalidity taints the evidence seized pursuant thereto and renders it inadmissible (People v. Fino, supra; People v. Politano, 17 A D 2d 503-504, affd. 13 N Y 2d 852).
I am aware that there are cases which hold that the determination of the court issuing the search warrant, even though it be issued ex parte, is “ conclusive, unless judgment is arbitrarily exercised ” (Castle v. United States, 287 F. 2d 657, 661; Evans v. United States, 242 F. 2d 534, 536; United States v. Ramirez, 279 F. 2d 712, 716), but the words “ arbitrarily exercised ” used in those cases must, in the light of the New York cases, be taken to mean a situation in which there is room for the exercise of discretion. They cannot mean, in the light of Fino (supra) that where the supporting affidavit “ does not rise above a bare suspicion ” that a crime was being committed on the premises, that the court reviewing the propriety of the warrant, upon direct attack, may not under such circumstances vacate it. As the court said in People v. Rainey (14 N Y 2d 35, 38-39): “In all these differing situations the validity of the search warrant depends on whether the showing, at the time of issuance, satisfies fundamental requirements as to the existence of probable cause * * *. The paramount concern, then, is what transpires at the issuance of the warrant and not what occurs thereafter. * * # warrant being void in its inception is void for all purposes ” (emphasis supplied).
Defendants’ motion is therefore granted to the extent of declaring the search warrant void and a nullity and suppressing the evidence seized pursuant thereto.